H. T. EDWARDS et al, Appellants,

v.

SHELL OIL COMPANY et al, Appellees.

No. 5492.

Court of Civil Appeals of Texas,
Eastland.

Jan. 22, 1981.

Rehearing Denied Feb. 26, 1981.

Richard J. Clarkson, Beaumont, Childs & Bishop, Odessa, for appellants.

Elton Gilliland, Shafer, Gilliland, Davis, Bunton & McCollun, Inc., Odessa, Cecil Kuhne, Crenshaw, Dupree & Milam, Lubbock, for appellees.

McCLOUD, Chief Justice.

H. T. Edwards sued Shell Oil Company and K & S Electric Company for injuries he sustained on June 12, 1974, when he came in contact with an electrically charged guy line that extended from the top of a pole to the ground.[1] K & S built the line on property controlled and maintained by Shell. The trial court instructed a verdict for K & S after the close of the evidence, and granted an instructed verdict for Shell after the jury was unable to reach a verdict. Plaintiff and intervenor appeal. We reverse and remand.

Plaintiff, an employee of Kelley-Coppedge, an independent contractor employed by Shell to construct a pipeline on premises controlled by Shell, was operating a ditching machine which dug up the guy line anchor causing the loose guy line to come in contact with a high voltage electrical line. Edwards either touched the energized guy line, or the guy line arced, causing him severe personal injuries.

 In deciding if the instructed verdicts were proper, we must consider the evidence in its most favorable light in support of Edwards' position, and disregard all contrary evidence and inferences. *Anderson v. Moore*, 448 S.W.2d 105 (Tex.1969); *Slay v. Burnett Trust*, 143 Tex. 621, 187 S.W.2d 377 (1945). When reasonable men may differ as to the truth of controlling facts, a jury issue is present. *Henderson v. Travelers Insurance Company*, 544 S.W.2d 649 (Tex.1976).

The controlling facts are sharply disputed. Plaintiff contends the guy line was either uninsulated or inadequately insulated. Plaintiff presented witnesses who had many years experience working with high voltage electrical lines who testified that the guy line was either uninsulated, or improperly insulated, and that such line should have been properly insulated to protect people who might come in contact with the guy line. Defendants' witnesses essentially testified that the line was properly insulated,

and that the purpose of insulating the line was for lightning protection and not for the protection of people.

Bob Stephenson testified that he had worked for twenty-two years as a line foreman for Southwest Public Service, the utility that furnished electricity for the Shell system; he and a two-man crew arrived at the scene shortly after the accident; there was no guy strain insulator at the top of the pole when they arrived; he put in two guy strain insulators, spliced with a nine-inch piece of steel; the two insulators he installed were about six feet in length; safety of people working around the guy line is one of the reasons for installing guy strain insulators; if the guy wire breaks loose, the guy strain insulator should keep the guy wire from becoming energized; if there was a three-foot long guy strain insulator in the line, it would not have been long enough to extend over the high voltage primary line; and it would take about six feet to clear the primary line in the event the guy line became slack.

Kenneth Ray McGill and Wally Nichols testified that there was no insulator on the guy line at the time of the accident. Garland Moore, a Southwestern Public Service employee, stated that when he arrived at the accident scene he observed one approximately 24-inch guy strain insulator on the guy line. The insulator was not long enough to clear the "hot phase" in the event slack developed in the guy line. He testified that they added an insulator and a nine-inch steel splice to make the insulator long enough to extend over the high voltage line. Moore stated that the insulator should extend over the high voltage line for safety reasons. He said that it is not unusual for a guy wire to come loose. Larry Black, a trouble shooter for Southwestern Public Service Company, testified that he had been handling electricity for thirty-one years, and electricity is a dangerous instrumentality. He said that insulators are put on guy lines for safety reasons, and that guy lines from time to time come loose for various reasons.

1. Gulf Insurance Group intervened seeking recovery of workers' compensation benefits it had paid to Edwards in the event Edwards recovered damages from the defendants.

The pipeline under construction ran parallel to the electric line. The location of the pipeline was determined and staked by Shell. There is evidence that the supervisor for Kelley-Coppedge was told by a Shell representative that they could not move the ditch over in the event guy lines got in the way. The supervisor, Nichols, stated that he asked Shell's representative if the ditch line was going to hit the guy line, and he was told that the engineers had staked it and missed everything.

As a result of the electric shock, plaintiff suffered a loss of memory and does not recall any of the events leading up to the accident. He had dug the ditch by another guy line the day before the accident and had encountered no problems. The guy line in question went into the ground at an angle and continued at an angle under the ground. Plaintiff was unaware the guy line continued at an angle underground.

Shell and K & S contend that plaintiff failed to prove the existence and violation of a legal duty owed to him by defendants. They rely upon *Abalos v. Oil Development Company of Texas*, 544 S.W.2d 627 (Tex. 1976), and argue that the damage arose out of the activity conducted by and under the control of plaintiff's employer. *Abalos* is not in point. There the court carefully pointed out:

> No dangerous conditions existed on defendant's premises when Ruthco and its crew, including Abalos, came upon them to do their work. There is no testimony that an ordinary pumping oil well, such as the one in question, is an inherently dangerous instrumentality or would constitute a dangerous activity upon the premises. No mechanical defects were alleged, and there were no concealed dangers.

In the instant case, there is evidence that the dangerous condition, the uninsulated or inadequately insulated guy line, was in existence when plaintiff came upon the property. The dangerous condition did not arise out of the work activity of plaintiff. We think that *West Texas Utilities Co. v. Renner*, 53 S.W.2d 451 (Tex.Comm'n App.1932,

holding approved) is more nearly in point. There, an employee of an independent contractor was injured while erecting a building on the utility's property. The plaintiff urged that the defendant was negligent in maintaining its uninsulated high voltage wires at or near the place where plaintiff worked. The injured plaintiff lost his balance while working on the roof, and while regaining his balance a metal bar he was holding either touched or came into close proximity to the high voltage wire. The court said:

> A company maintaining electrical wires over which a high voltage of electricity is conveyed, rendering them highly dangerous to others, is under the duty of using the necessary care and prudence at places where others may have the right to go, either for work, business, or pleasure, to prevent injury. *Rucker v. Sherman Oil & Cotton Co.*, 29 Tex.Civ.App. 418, 68 S.W. 818; Joyce Electric Law, § 445.

See also: *Sun Oil Company v. Massey*, 594 S.W.2d 125 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.).

It is clear that in *Abalos, Shell Chemical Company v. Lamb*, 493 S.W.2d 742 (Tex. 1973), *Pence Construction Corporation v. Watson*, 470 S.W.2d 637 (Tex.1971), and *Hailey v. Missouri, K. & T. R. R. Co.*, 70 S.W.2d 249 (Tex.Civ.App.—Fort Worth 1934, writ ref'd), no dangerous condition existed on the premises when the invitee entered, and the dangerous condition arose out of the performance of work by the independent contractor.

Defendants cite *Houston Lighting & Power Company v. Brooks*, 161 Tex. 32, 336 S.W.2d 603 (1960) to support their contention that there is no evidence that they had reason to anticipate injury. There was no evidence in *Brooks* that the electric lines were improperly constructed or maintained.

We disagree with defendants' assertion that there is no evidence of negligence or proximate cause. When we apply the appropriate instructed verdict rules, there is evidence that guy line wires which are above high voltage electrical lines, and which would fall into a high voltage line if

slack developed in the guy wire, should include insulators sufficient to prevent the guy line from becoming energized. There is evidence that guy lines become loose for various reasons and the insulators are a necessary safety factor. There is evidence that the guy line in question either had no insulator or had inadequate insulators. The jury could have reasonably concluded from the testimony that the plaintiff would not have been injured if the guy line had contained proper insulators.

■ Proximate cause embraces two distinct concepts: (1) cause in fact, and (2) foreseeability. *Baumler v. Hazelwood*, 162 Tex. 361, 347 S.W.2d 560 (1961). The Court in *Port Terminal Railroad Association v. Ross*, 155 Tex. 447, 289 S.W.2d 220 (1956) said:

> Prosser states that if the defendant's act or omission was a substantial factor in bringing about the result, it will be regarded as a cause in fact, and that ordinarily it will be such a substantial factor if the result would not have occurred without it. Prosser, Law of Torts, p. 321, sec. 46. In this sense, the defendant's negligence was a substantial factor in causing the plaintiff's injuries, which would not have been sustained if the drum had been placed on the rack. It has also been pointed out repeatedly that for the defendant's negligence to be regarded as a proximate cause of the plaintiff's injury, it is not necessary that the exact nature of the injury or the precise manner of its infliction should reasonably have been foreseen. It is sufficient that the defendant should reasonably have anticipated consequences or an injury of the general nature of that which ensued.

See also: *Missouri Pacific Railroad Company v. American Statesman*, 552 S.W.2d 99 (Tex.1977).

K & S constructed, and Shell accepted, the electrical system in question approximately two years before the accident. Our Supreme Court in *Strakos v. Gehring*, 360 S.W.2d 787 (Tex.1962) rejected the "accepted work" doctrine and held that a contractor who left premises in an unsafe condition could be liable even though the work had been accepted by the owner of the premises.

K & S argues that the evidence relates only to the condition of the guy line at the time of the accident, and there is no evidence that the same condition existed when the work was completed. K & S offered no evidence that the guy line was insulated in a manner different from the way it existed at the time of the accident. Plaintiff is aided by the presumption in *Eubanks v. Winn*, 469 S.W.2d 292 (Tex.Civ.App.—Houston [14th Dist.] 1971, writ ref'd n.r.e.) wherein the court said:

> Moreover, we believe that in this case the rule is applicable that where the existence of a status or a state of things, a personal relation or a custom is once established, it is presumed that such status continues until the contrary is shown, or until a different presumption is raised from the nature of the subject in question. *Aetna Casualty & Surety Co. v. Dixon*, 145 S.W.2d 620, 624 (Tex.Civ. App.), writ ref. And the above rule does not operate only prospectively but retrospectively, and the circumstances of the case are material and may be considered. *Ross v. Green*, 135 Tex. 103, 139 S.W.2d 565, 570–571 (Tex.Com.App.), op. adopted; 1 Texas Law of Evidence, McCormick & Ray, 2d Ed., Sec. 81, pp. 83–84; *Brice v. Edwards*, 260 S.W.2d 132, 134 (Tex.Civ. App.), writ ref., n.r.e.

■ Also, where evidence is peculiarly within the knowledge or control of a party, its failure to produce it raises the presumption that, if offered, the evidence would have been unfavorable to it. *City of Galveston v. State*, 518 S.W.2d 413 (Tex.Civ. App.—Houston [14th Dist.] 1975, no writ).

■ Plaintiff, an employee of Kelley-Coppedge, did not violate Tex.Rev.Civ.Stat. Ann. art. 1436c. He was not required to notify Shell that work was to be done near the power line. *Ringo v. Gulf States Utilities Company*, 569 S.W.2d 31 (Tex.Civ.App. —Beaumont 1978, writ ref'd n. r. e.); *Sun Oil Company v. Massey*, 594 S.W.2d 125 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n. r. e.).

■ We also hold that the court abused its discretion in severing plaintiff's cause of action against K & S from plaintiff's suit against Shell. Plaintiff asserted a joint and several cause of action for an indivisible injury. The court's severance order is set aside, and the trial court is instructed to consolidate the severed cases. *Pierce v. Reynolds*, 160 Tex. 198, 329 S.W.2d 76 (1959); *Landers v. East Texas Salt Water Disposal Co.*, 151 Tex. 251, 248 S.W.2d 731 (1952); 3 McDonald, Texas Civil Practice § 10.25 (1970).

■ The judgment of the trial court is reversed, and the cause is remanded for a new trial. There is some evidence that K & S negligently constructed, and Shell negligently maintained the guy line in question. There is some evidence that the negligence of the defendants was a proximate cause of plaintiff's injuries.