## Ronald L. HULLUM, Plaintiff-Appellant,

v.

## The SKYHOOK CORPORATION, et al., Defendants,

## Exxon Corporation, Defendant-Appellee.

### No. 84–2079.

United States Court of Appeals, Fifth Circuit.

Feb. 28, 1985.

---

Jones, Jones, Baldwin, Curry & Roth, Doyle Curry, Francis Scott Baldwin, Jr., Marshall, Tex., for plaintiff-appellant.

J. Kevin French, Rene J. Mouledoux, Houston, Tex., for Exxon.

Before GOLDBERG, RUBIN, and JOHNSON, Circuit Judges.

PER CURIAM:

This Texas diversity suit arises out of an accident in which the plaintiff, Ronald Hullum, suffered a serious electrical shock while installing an Exxon sign at an independently owned service station. Prior to the accident in question, Exxon had contracted with Hullum's employer, Bright Sign Co., to install the sign. Hullum argued at the district court and contends here that Exxon is a "person ... responsible for the work to be done" under a Texas statute requiring such persons to ensure worker safety by arranging precautionary measures with operators of high voltage power lines. Tex.Rev.Civ.Stat.Ann. art. 1436c § 6 (Vernon 1980).[1] We are compelled to reject Hullum's contention under the facts of the case at bar and affirm.[2]

1. Sections 3, 6, and 7 of article 1436c provide:

Sec. 3. Unless danger against contact with high voltage overhead lines has been effectively guarded against pursuant to the provisions of Section 6 of this Act, no person, firm, corporation, or association shall require any employee to perform and no person, firm, corporation, or association shall, individually or through an agent or employee, perform any function or activity upon any land, building, highway, or other premises if at any time during the performance of any function or activity, it is possible that the person performing the function or activity shall move or be placed within six feet of any high voltage overhead line or if it is possible for any part of any tool, equipment, machinery, or material used by such person to be brought within six feet of any high voltage overhead line during the performance of any such function or activity.

Sec. 6. *When any person, firm, or corporation desires to temporarily carry on any function, activity, work, or operation in closer proximity to any high voltage overhead line than permitted by this Act, the person or persons responsible for the work to be done shall promptly notify the operator of the high voltage line. The work shall be performed only after satisfactory mutual arrangements have been negotiated between the owner or the operator of the lines or both and the person or persons responsible for the work to be done for temporary mechanical barriers separating and preventing contact between material, equipment, or persons and high voltage electric lines, temporary de-energization and ground-*

*ing, or temporary relocation or raising of the lines.* The actual expense incurred by any operator of high voltage lines in providing clearances as above set out *shall be paid by the person or persons responsible for the work to be done in the vicinity thereof* and the operator of the lines may require such payment in advance, such operator being without obligation to provide such clearance until such payment shall have been made. Should the actual expense be less than the payment made the difference shall be refunded. The operator of the lines shall be given not less than 48 hours' advance notice to arrange for such temporary clearances.

Sec. 7. (a) Every person, firm, corporation, or association and every agent or employee of such person, firm, corporation, or association who violates any of the provisions of this Act shall be fined not less than $100, nor more than $1,000 or confined in jail for not more than one year or both.

(b) If a violation of this Act results in physical or electrical contact with any high voltage overhead line, the person, firm, corporation, or association violating the provisions of this Act shall be liable to the owner or operator of such high voltage line for all damage to such facilities and for all liability incurred by such owner or operator as a result of any such contact. (emphasis added)

2. Defendant Exxon was the only defendant remaining at the time of trial. Prior to trial, Hullum settled with defendants Skyhook Corporation, Baldwin-Ward Manufacturing Co., and

## I. THE FACTS

The service station where the accident occurred was operated by James Fennell in Sulphur Springs, Texas. Fennell had subleased the property from Pogue Oil Company ("Pogue Oil") which had leased the property from Mrs. J.D. Rories. Defendant Exxon neither owned nor possessed any financial interest in the property upon which the Fennell service station was located.

Pogue Oil was a petroleum products distributor. On an annual basis, Pogue Oil contracted with Exxon for the purchase of Exxon petroleum products. Pogue Oil, in turn, sold petroleum products to service stations like the one operated by Fennell. Although Pogue Oil was a customer of Exxon, Pogue Oil was not owned by Exxon and was free to purchase petroleum products from Exxon's competitors. Likewise, Fennell's service station was not owned by Exxon.

As part of its arrangement with Exxon, Pogue Oil could require Exxon to furnish an Exxon sign at service stations selling Exxon products.[3] Pursuant to this arrangement, Pogue Oil requested that Exxon supply a sign for Fennell's station. After receiving Pogue Oil's request, Exxon issued a work order. Exxon's maintenance and repair center then contacted Bright Sign Company to install the sign.[4] Exxon did not know the specific proposed location of the sign at Fennell's station and advised Bright Sign to contact Mr. Pogue (of Pogue Oil) to learn where the sign should be erected. After contacting Bright Sign,

Exxon had no further involvement in the installation of the sign at Fennell's station.[5]

On February 13, 1979, Bright Sign sent a crew, which included Hullum, to Fennell's station to erect the sign. The crew contacted Pogue and Fennell for the exact location of the sign. Pogue or Fennell decided where the sign was to be erected. The selected location of the sign required work to be done within close proximity of an overhead power line. No one, however, notified the power company to turn off the power. When the boom of the Bright Sign truck being used to erect the sign came into contact with the power line, Hullum sustained multiple electrical shock injuries.

Exxon's involvement in the events leading up to the accident was slight. Exxon had no employee on the premises at the time of the accident. Indeed, Exxon felt itself prohibited—apparently by antitrust considerations—from entering onto the premises of an independent station, like the one operated by Fennell, for the purpose of giving instructions on how business was to be conducted. No Exxon employee supervised the erection of the sign in any manner. Exxon had no knowledge of where the sign was to be erected on the station premises. The location of the sign was not specified on any drawing or blueprint made available to Exxon.

The case was tried to a jury on October 19–21, 1982. At the close of Hullum's proof, the district court found as a matter of law (1) that installation of the sign was not an inherently dangerous activity and (2) that Bright Sign was an independent contractor.[6] After the close of all evidence,

Automatic Merchandising, Inc. Hullum alleged products liability claims against these three defendants for the sale and manufacture of the equipment with which Hullum was working when he was injured.

3. Exxon could not refuse to provide the sign as long as the station sold Exxon products.

4. Bright Sign and Exxon had entered into a contract employing Bright Sign to erect Exxon signs as early as 1971. Exxon owned no interest in Bright Sign. Bright Sign did not have the exclusive right to erect Exxon's signs.

5. The contract between Bright Sign and Exxon provided that Bright Sign was responsible for compliance with all applicable laws.

6. Generally, Texas common law principles provide that a person having services performed by an independent contractor is not liable for injuries sustained by the employees of an independent contractor. *Lathers v. Penguin Industries, Inc.,* 687 F.2d 69, 72–73 (5th Cir.1982) (applying Texas law). An exception to the general rule occurs when a person hires an independent contractor to perform inherently dangerous work. *Id.* at 73. Under the district court's

the district court submitted two issues to the jury: (1) the percentage, if any, of Hullum's contributory negligence, and (2) the amount of damages Hullum incurred. The jury returned a verdict finding no contributory negligence and damages in the amount of one million dollars. The district court reserved for itself the question of whether article 1436c applied to Exxon. The district court later issued an opinion holding that article 1436c did not apply to Exxon under the circumstances of this case.

## II. INTERPRETATION AND APPLICATION OF ARTICLE 1436c

Hullum argues that the district court erred in its interpretation and application of article 1436c. Hullum contends that the district court's interpretation excluding Exxon from liability under article 1436c was too narrow and that substantial evidence presented at trial was sufficient for a jury to reasonably conclude that Exxon was a "person responsible for the work to be done" under article 1436c. Hullum concludes that Exxon should be held negligent per se under article 1436c.

Crucial to the outcome of the instant case is the interpretation of the phrase "person ... responsible for the work to be done." Although several Texas courts have construed article 1436c, neither the parties nor this Court's research has revealed any case directly addressing the issue of the interpretation of this phrase under circumstances relevant to the case at bar. This Court's task, then, is to decide how the Texas state courts would hold when faced with the issue. *See Powell, Inc. v. Abney*, 669 F.2d 348, 349 (5th Cir. 1982).

■ In its interpretation of the phrase "person ... responsible for the work to be done," the district court noted that it could "envision circumstances in which liability for violation of the standards provided in article 1436c could be imposed" on a party other than the injured worker's employer.

*Hullum v. Skyhook Corp.*, No. M–80–210–CA, op. at 7 (E.D.Tex. Jan. 10, 1984). Applying accepted rules of statutory construction, the district court, however, concluded that the language and policy of article 1436c required that liability under the statute be linked to "*some* degree of control over the work site." *Hullum*, op. at 9 (emphasis added).

■ The district court did not err in its interpretation of article 1436c. The policy underlying article 1436c is "to insure the safety of persons engaged in activities near high voltage lines." *Ringo v. Gulf States Utilities Co.*, 569 S.W.2d 31, 35 (Tex.Civ. App.—Beaumont 1978, writ ref'd n.r.e.). Focusing liability on those parties who exercise some degree of control over the work site furthers the Texas legislature's policy of worker safety since those parties determine where the work is to be done; those parties are the ones most likely to know whether or not the work will be performed near a power line. Placing liability on parties who do not exercise at least some control over the work site, on the other hand, lays the burden on parties who do not determine the location of the work site or its proximity to a power line. Indeed, placing liability on those with little or no control over the work site lessens the deterrent impact of the statute on those parties who do exercise control over the work site.

This analysis is reinforced by the statutory language. The introductory phrase of section 6 of article 1436c states: "When any person ... *desires to temporarily carry on* any ... work ... in closer proximity to any high voltage overhead line than permitted by this Act, the person or persons responsible for the work to be done shall...." This introductory phrase focuses on those parties who desire to temporarily carry on the work and who therefore exercise some degree of control over the work site. Likewise, section 6 goes on to provide that the expense of the safety precautions shall be paid "by the person or persons responsible for the work to be done *in the vicinity thereof.*" Again, the

findings in the instant case, Hullum could not

recover under common law principles.

focus is on the parties who are "in the vicinity" of the work and who have some control over the work site.

Nor did the district court err in its conclusion that Exxon did not exercise some degree of control over the work site. Evidence produced at trial revealed that Exxon had little involvement with installation of the sign. Under its arrangement with Pogue Oil, Exxon had to furnish the sign at Pogue Oil's request as long as Exxon products were sold to the public at Fennell's service station. Under this arrangement, Exxon had no knowledge of the specific proposed location of the sign. Exxon did not specify the location of the sign on the station premises, other than to instruct Bright Sign to install it such that the sign was visible and attractive to the consuming public. Thus, parties other than Exxon determined that the sign was to be placed near high voltage power lines. Further, no Exxon employee was present at the work site; indeed, once Exxon approved the work order and contacted Bright Sign, Exxon had no further contact with the sign's installation. Moreover, Exxon did not own any interest in the station premises. Finally, Exxon owned no interest in Bright Sign and no evidence indicates that Exxon employed an independent contractor like Bright Sign with the intent of avoiding liability under article 1436c.[7]

Without the presence of such circumstances, or similar ones, it cannot be said that the district court erred in holding that Exxon was not negligent per se under article 1436c.[8]

## III. CONCLUSION

Since the district court did not err in its interpretation or application of article 1436c, the judgment of the district court is

AFFIRMED.

7. Indeed, testimony at trial indicated that Exxon previously had cautioned Bright Sign about complying with article 1436c and had instructed Bright Sign never to erect an Exxon sign illegally.

8. Hullum also argues that the district court erred in holding that installation of the sign was not inherently dangerous work. Texas courts

have held that when the dangerous condition arises out of the manner in which the independent contractor performs the work, the employer of the contractor is not liable for the resultant injury. *Shell Chemical Co. v. Lamb,* 493 S.W.2d 742, 747 (Tex.1973). In the instant case, the danger arose out of Bright Sign's performance of the work.