**Pablo CORPUS, Jr., Appellant,**

v.

**K–J OIL COMPANY, Appellee.**

**No. 14648.**

Court of Appeals of Texas, Austin.

Nov. 12, 1986.

Rehearing Denied Dec. 17, 1986.

**673**

Andrew Cline, Bayne, Snell & Krause, San Antonio, for appellant.

Sharon E. Callaway, Groce, Locke & Hebdon, San Antonio, for appellee.

Before SHANNON, C.J., and BRADY and CARROLL, JJ.

SHANNON, Chief Justice.

Appellant, Pablo Corpus, Jr., sued appellee K–J Oil Company in the district court of Caldwell County for personal injury resulting from an oil-field accident. The district court rendered summary judgment that Corpus take nothing. This Court will affirm the judgment.

K–J employed Cox Oil Well Service (Cox) to "pull"[1] its well "B–2" on the Brown Lease in Caldwell County. Corpus was an employee of Cox. In the process of pulling the pipe, the work-over rig boom touched an overhead electric highline (or powerline) and Corpus suffered severe burns from the resulting electrical shock.

Corpus pleaded that K–J as occupier of land owed him a duty of reasonable care. A duty to Corpus could arise if (1) K–J, as owner or occupier, retained control over the work of Cox, the independent contractor, or (2) there was a dangerous condition on the leased premises which was not reasonably apparent. By its motion for summary judgment, K–J asserted that under the summary judgment proof, as a matter of law, it owed no duty to Corpus.

The summary judgment proof showed that Corpus worked for Cox as a rod wrencher on its oil-field workover rigs. On December 6, 1983, Charles Cheatham, field supervisor for K–J, reported to Cox that its "B–2" well was not pumping properly and requested Cox to pull the well. K–J customarily reported any difficulties with a well to Cox and then Cox would send a work-over rig crew to the well to put it back into operation. Cox's employees determined how the requested work was to be done and did not look to K–J to direct their work at the well.

Cox sent out its work-over rig and crew to the "B–2" well on the morning of December 7. The crew consisted of the foreman, Pedro Sanchez, Corpus, and two others. Not knowing the location of the "B–

---

1. As the Court understands, "pulling" a well consists of removing pipe and other underground equipment from the well.

2" well, Corpus and another crewman drove around looking for someone to show them the location of the well. Corpus encountered Marselino Garcia, a K–J pumper, whose job was to gauge and check about half of the K–J wells. Garcia led Corpus to the "B–2" well site. Having never seen a work-over rig in operation, Garcia parked his truck and waited to see the crew pull the well.

Sanchez began backing the work-over rig into place in front of the well and raising the boom while Corpus and another crewman began pulling the metal horses and rods off the rig. Suddenly, Corpus shouted to Garcia, asking whether the boom was going to hit the overhead electrical wires. Garcia testified on deposition that he stepped forward to get a better view as to how close the boom was to the highline, and by the time he stepped forward, sparks were shooting out. He then ran toward his pickup without having time to answer. Corpus, however, testified on deposition that Garcia shouted "no" in response. When Corpus continued to hold onto the metal horses, he was burned.

■ The affirmance of a summary judgment for a defendant depends upon whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. If the defendant's summary judgment proof does not establish as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's case, then the plaintiff does not have the burden, to avoid summary judgment, of going forward with summary judgment proof of like quality. *Swilley v. Hughes,* 488 S.W.2d 64 (Tex.1972); *Torres v. Western Casualty and Surety Company,* 457 S.W.2d 50 (Tex. 1970); *Gibbs v. General Motors Corporation,* 450 S.W.2d 827 (Tex.1970).

■ An owner or occupier, in general, has no duty to see that an independent contractor performs work in a safe manner. *Abalos v. Oil Development Co.,* 544 S.W.2d 627 (Tex.1976). Nevertheless, if the owner or occupier retains control over any part of the work entrusted to an independent contractor, he owes a duty to exercise that control with reasonable care and may be subject to liability for physical injury to others for whose safety the independent contractor owes a duty of reasonable care. *Redinger v. Living, Inc.,* 689 S.W.2d 415 (Tex.1985).

■ The summary judgment proof conclusively establishes that Corpus was an employee of Cox and that Cox was acting in the capacity of an independent contractor in pulling the "B–2" well. The proof shows further that Cox controlled the job and that K–J retained no right of control. Accordingly, K–J owed no duty to Corpus under the first asserted theory of liability. *Redinger v. Living, Inc., supra.*

■ Corpus' second theory of K–J's liability is that an owner or occupier owes a duty to warn invitees of a dangerous condition of the premises not reasonably apparent. *Bryant v. Gulf Oil Corp.,* 694 S.W.2d 443 (Tex.App.1985, writ ref'd n.r.e.); *Sun Oil v. Massey,* 594 S.W.2d 125 (Tex.Civ. App.1979, writ ref'd n.r.e.). The highline, as constructed, did not become dangerous to those working below until the foreman, Sanchez, caused the work-over rig's boom to come in contact or close proximity with the highline. An owner or occupier of premises may assume that a contractor will perform his responsibilities in a safe and workmanlike manner, taking proper care and precautions to assure the safety of his employees. *Jenkins v. Fritzler Development Corp.,* 580 S.W.2d 63, 65 (Tex.Civ. App.1979, writ ref'd n.r.e.). Absent exceptional circumstances, an owner or occupier of premises has no duty to warn an independent contractor's employees of dangers which arise from the performance of their work. *Bryant v. Gulf Oil Corp., supra.* There are no exceptional circumstances in this cause which would impose a duty upon K–J to warn of the highline.

The highline plainly was not a hidden danger on the premises (one not reasonably apparent). The photographs of the "B–2" well site, attached to the motion for summary judgment, show an ordinary overhead highline. The owner of Cox acknowledged

that "anybody could have seen that line wire in front of the rig." Sanchez, likewise, agreed that the electric line was in plain sight and that all one had to do was look in order to see it. Sanchez admitted that he did not see the electric line because he was not paying much attention.

Arguing for reversal of the summary judgment, Corpus points to the conflict in the deposition testimony of Cheatham and Cox concerning whether Cheatham did, indeed, warn Cox about the electric highline on the lease. Corpus also points to the deposition testimony of Sanchez that no one looked up to the highline nor did he see the highline when he set up the work-over rig.

It is true that Cheatham and Cox differ as to whether Cheatham warned Cox of the highline. The conflict, however, is immaterial because, under the summary judgment proof, Cheatham had no duty to warn Cox or his employees. The fact that Sanchez and the other crewmen were not paying attention did not change the presence of the highline from a reasonably apparent condition into a dangerous condition about which the occupier of the premises had a duty to warn.

Because K–J's summary judgment proof established as a matter of law that K–J owed no duty to Corpus, the summary judgment is affirmed.