**Vance R. McCAUGHTRY and Houston Lighting & Power Company, Appellants,**

v.

**BARWOOD HOMES ASSOCIATION, Appellee.**

No. 14–96–01546–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 30, 1998.

Rehearing Overruled Sept. 24, 1998.

Jane Bland, Travis James Sales, Jerry W. Gunn, Paul F. Waldner, Houston, for appellants.

James K. Gardner, Houston, Thomas H. Crofts, Ellen B. Mitchell, San Antonio, for appellee.

Before LEE, ANDERSON and FOWLER, JJ.

## OPINION

LEE, Justice.

Appellants, Houston Lighting & Power Company (HL & P) and Vance R. McCaughtry (McCaughtry), appeal the trial court's granting summary judgment in favor of appellee, Barwood Homes Association, Inc. (Barwood). We affirm in part and reverse and remand in part.

## I. Background

Barwood owns and operates a clubhouse and recreational facilities, including a swimming pool and a tennis court, in Cypress, Texas. A chain link fence surrounds the tennis court, which has six light standards located outside the fence. The light standards are approximately twenty-five feet in height. A high voltage power line, with the lower line approximately twenty-five feet in height or the same height as the light standards, carrying approximately 19,900 volts of power, runs diagonally through the Barwood property. At one point the power line is approximately nine to nine and one-half feet from one of the tennis court light standards. HL & P owns the power line.

In August 1993, Barwood entered into a contract with C.L. Sports, owned by Craig Littlefield (Littlefield), for the refurbishment of its tennis court and the painting of the light standards surrounding the court. Littlefield hired McCaughtry and Dennis Espinoza (Espinoza) for the Barwood job.

When it came time to paint the light standards, Littlefield, McCaughtry, and Espinoza assembled a scaffold so McCaughtry and Espinoza could reach the top of the light standards with roller brushes. For the painting of the first five standards, the scaffold was placed on the tennis court, inside the fence. For the painting of the final light standard, the scaffold was placed outside the fence. Although the scaffold had been placed inside the fence when the primer coat was applied to the sixth light standard, it was decided the scaffold should be placed outside the fence because it would be easier to reach the top of the light standard.

On August 17, 1993, McCaughtry ascended the top of the scaffold and proceeded to paint the top of the sixth light standard with an aluminum extended-handle paint roller. While painting the light standard, the handle of McCaughtry's paint roller came into con-

tact with the high voltage power line. Espinoza, who was on the ground, heard a loud noise and looked up to see the paint roller flying in the air and McCaughtry fall over the rail of the scaffold to the ground. McCaughtry sustained personal injuries, including a fractured right ankle, third degree burns over sixty percent of his body, internal injuries, a closed head injury, and the amputation of his left leg below the knee.[1]

On September 16, 1993, McCaughtry brought suit against HL & P and Barwood for negligence and negligence *per se*. McCaughtry's claims against HL & P were grounded on HL & P's alleged failure to properly maintain the power line.[2] McCaughtry's negligence claims against Barwood were based upon the theory of premise defect and his negligence *per se* claims were based on Barwood's failure to contact HL & P, the owner and operator of the power line, for the temporary de-energization of the power line, in violation of §§ 752.003 and 752.004 of the Texas Health & Safety Code.[3]

Section 752.003 of the Texas Health & Safety Code provides that a party responsible for work being performed near a high voltage power line must make arrangements with the operator of the power line for its temporary de-energization. It states:

(a) A person, firm, corporation, or association responsible for temporary work or a temporary activity or function closer to a high voltage overhead line than the distances prescribed in this chapter must notify the operator of the line at least 48 hours before the work begins.

(b) A person, firm, corporation, or association may not begin the work, activity, or function under this section until the person, firm, corporation, or association responsible for the work, activity, or function and the owner or operator, or both, of the high voltage overhead line have negotiated a satisfactory mutual arrangement to provide temporary de-energization and grounding. . . .

Tex. Health & Safety Code Ann. § 752.003 (Vernon 1992).

Section 752.004 of the Texas Health & Safety Code provides a person may not work within six feet of a power line unless it has been de-energized. It states:

(a) Unless a person, firm, corporation, or association effectively guards against danger by contact with the line as prescribed by Section 752.003, the person, firm, corporation, or association, either individually or through an agent or employee, may not perform a function or activity on land, a building, a highway, or other premises if at any time it is possible that the person performing the function or activity may:

(1) move or be placed within six feet of a high voltage overhead line while performing the function or activity; or

(2) bring any part of a tool, equipment, machine, or material within six feet of a high voltage overhead line while performing the function or activity.

---

1. The accident produced traumatic amnesia and McCaughtry cannot recall how the accident occurred.

2. Specifically, McCaughtry alleged HL & P was negligent in:(1) allowing an electrical current to flow through the power line at the work site, knowing that such site was to be used by workmen who could come into contact with the power line; (2) failing to sleeve, guard, or place temporary protective devices on the power line, or otherwise failing to temporarily de-energize the power line at that work site; (3) failing to warn McCaughtry or Littlefield that an electrical current continued to flow through the power line at the work site; (4) installing or maintaining a high voltage power line too close to the light standard which HL & P knew had to be serviced from time to time; (5) failing to properly maintain or inspect its power line or power pole; and

(6) failing to guy the power pole nearest the tennis court which had an eleven-degree lean towards the light standard.

3. Specifically, McCaughtry alleged Barwood was negligent in: (1) failing to warn McCaughtry of the close proximity of the power line to the light standard; (2) failing to inform HL & P of the intended work to be done in the proximity of the power line; (3) installing the light standard too close to HL & P's power line, if in fact, the light standard was installed after the installation of the power line; (4) failing to properly maintain its premises in a safe condition to protect its business invitees; (5) failing to provide McCaughtry a safe place to work; (6) failing to inspect the premises of the job site to discover the dangerous condition inherent on the premises; and (7) failing to correct the dangerous condition inherent on the premises.

TEX. HEALTH & SAFETY CODE ANN. § 752.004 (Vernon 1992).

Barwood moved for summary judgment against McCaughtry, which the trial court granted. Subsequently, HL & P filed a cross-claim against Barwood, seeking indemnification under TEX. HEALTH & SAFETY CODE ANN. § 752.008 (Vernon 1992), which provides:

If a violation of this chapter results in physical or electrical contact with a high voltage overhead line, the person, firm, corporation, or association that committed the violation is liable to the owner or operator of the line for all damages to the facilities and for all liability that the owner or operator of the line incurs as a result of the contact.

Barwood moved for summary judgment against HL & P's indemnification claim on the basis that it was not the party responsible for McCaughtry's work under § 752.003. The trial court granted summary judgment against HL & P.

In four points of error, McCaughtry claims the trial court erred in granting summary judgment because Barwood failed to establish that it: (1) complied with its duty to warn McCaughtry of a hazardous condition or that there was no duty to warn McCaughtry of a known hazard; (2) maintained the premises in a safe manner at the time of the accident; and (3) was in compliance with the applicable safety standards for high voltage power lines. HL & P, in one point of error, claims the trial court erred in granting summary because Barwood was a responsible party under § 752.003.

## II. Standard of Review

To prevail on a motion for summary judgment, the defendant must "establish as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action." *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970); *see also Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997). Once the defendant establishes

that no genuine issue of material fact exists regarding an element of the plaintiff's claim, the plaintiff must present competent summary judgment proof raising a fact issue on that element. *See Ross v. Arkwright Mut. Ins. Co.,* 892 S.W.2d 119, 127 (Tex.App.— Houston [14th Dist.] 1994, no writ). The Texas Supreme Court set forth the following standard for appellate review of summary judgments:

(1) the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

(2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and

(3) every reasonable inference must be indulged in favor of the non-movant and any·doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Bottoms v. Smith,* 923 S.W.2d 247, 249 (Tex.App.— Houston [14th Dist.] 1996, no writ).

## III. Premises Liability

In his second point of error, McCaughtry claims Barwood failed to establish that it had complied with its duty to warn him of a hazardous condition—that a high voltage power line was located at its nearest point, nine feet from one of the light standards—or that it had no duty to warn McCaughtry of a known hazard. In his third point of error, McCaughtry claims Barwood failed to establish that it had maintained its premises in a safe manner because it maintained a light standard only nine feet from a high voltage power line.[4]

Under Texas law, an invitee is a person who enters the premises of another in answer to an express or implied invitation from the owner or occupier for their mutual benefit. *See Montes v. Indian Cliffs Ranch, Inc.,* 946 S.W.2d 103, 105 (Tex.App.—El Paso 1997, writ denied) (citing *Peerenboom v. HSP Foods, Inc.,* 910 S.W.2d 156, 161 (Tex.

---

4. In his first point of error, McCaughtry generally claims the trial court erred in granting summary judgment in favor of Barwood.

App.—Waco 1995, no writ)). The duty owed to an employee of a contractor working on the premises of an owner or occupier at the time of injury is that owed to a business invitee. *See Shell Chem. Co. v. Lamb*, 493 S.W.2d 742, 747 (Tex.1973); *Staublein v. Dow Chem. Co.*, 885 S.W.2d 502, 505 (Tex. App.—El Paso 1994, no writ). An owner or occupier of land has a duty to use reasonable care to protect an invitee from reasonably foreseeable injuries. *See Rosas v. Buddies Food Store*, 518 S.W.2d 534, 537 (Tex.1975); *Yeager v. Drillers, Inc.*, 930 S.W.2d 112, 115 (Tex.App.—Houston [1 st Dist.] 1996, no writ) (citing *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex.1985)). This duty is discharged by warning the invitee of unreasonable risks of harm either known to the owner or which would be known to him by reasonable inspection or making the premises reasonably safe. *See State v. Williams*, 940 S.W.2d 583, 584 (Tex.1996); *Pence Constr. Corp. v. Watson*, 470 S.W.2d 637, 638 (Tex.1971); *Smith v. Henger*, 148 Tex. 456, 226 S.W.2d 425 (1950).

■ The duty of an owner or occupier of land to keep the premises in a safe condition may subject him to liability in two situations: (1) those arising from a defect in the premises, and (2) those arising from an activity or instrumentality. *See Redinger*, 689 S.W.2d at 417; *Kovar v. Krampitz*, 941 S.W.2d 249, 255 (Tex.App.—Houston [14 th Dist.] 1996, writ requested). First, are those cases in which the dangerous condition existed at the time the invitee entered the property for business purposes or was created by someone or through some means unrelated to the injured invitee or his employer. *See Lamb*, 493 S.W.2d at 746. Under this situation, the owner of the premises is in a superior position to know of or discover the hidden dangerous conditions on his premises. *See Union Carbide Corp. v. Burton*, 618 S.W.2d 410, 413 (Tex.Civ.App.—Houston [14 th Dist.] 1981, writ ref'd n.r.e.).

■ Second, are those cases in which the dangerous condition arose out of the performance of the work for which the invitee/employee was hired. *See Lamb*, 493 S.W.2d at 746. Generally, the owner or occupier of the premises does not have a duty to see that an independent contractor performs the work in a safe manner. *See Parker v. Enserch Corp.*, 776 S.W.2d 638, 641–42 (Tex. App.—Dallas 1989), *aff'd in part, rev'd in part on other grounds*, 794 S.W.2d 2 (Tex. 1990) (citing *Abalos v. Oil Development Co.*, 544 S.W.2d 627 (Tex.1976)). Thus, the Texas Supreme Court announced the following rule:

> Where the activity is conducted by, and is under the control of, an independent contractor, and where the danger arises out of the activity [of its] staff, the responsibility or duty is that of the independent contractor, and not that of the owner of the premises.

*Abalos*, 544 S.W.2d at 631 (citing *Lamb*, 493 S.W.2d at 747). Under these circumstances, therefore, the invitee is in a superior position to prevent, inspect for, eliminate, or protect against the dangerous condition. *See Union Carbide Corp.*, 618 S.W.2d at 413.

■ The Texas Supreme Court, however, in adopting the RESTATEMENT (SECOND) OF TORTS § 414 (1977), set forth an exception to this general rule of premises liability with respect to the owner of the premises and the independent contractor. *See Redinger*, 689 S.W.2d at 418. The Restatement provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

*Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 414). This rule applies to circumstances wherein the employer retains some control over the manner in which the independent contractor's work is performed, but does not retain the degree of control which would subject him to liability as a master. *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 414, comment a (1965)). The court further defined the "degree of control" required to impose liability. Specifically, the "employer's role must be more than a general right to order the work to start or stop, to inspect progress or receive reports." *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 414, comment c (1965)).

He may retain only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others. Such supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in this Section unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others.

*Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 414, comment a).

## A. Duty to Warn

■ McCaughtry contends that although Barwood knew of the danger of a high voltage power line being adjacent to and within nine or nine and one-half feet of the light standard, it nonetheless failed to warn him of the potential danger of the situation.[5] According to McCaughtry, maintaining a high voltage power line is a pre-existing dangerous condition about which Barwood had the duty to warn him. *See Edwards v. Shell Oil Co.*, 611 S.W.2d 904 (Tex.Civ.App.—Eastland 1981, writ ref'd n.r.e.). In *Edwards,* the plaintiff was an employee of an independent contractor employed by Shell to construct a pipeline on premises which Shell controlled. *Id.* at 905. The plaintiff was operating a ditching machine when he dug up the guy anchor line causing a loose guy line, which was not adequately insulated, to come to come into contact with a high voltage power line. *Id.* The plaintiff then came into contact with the energized guy line. *Id.* Shell argued the accident arose out of the plaintiff's activity, not a pre-existing dangerous activity. *Id.* at 906.

The court, considering expert testimony that guy lines should be properly insulated because they can come loose, rejected Shell's argument and found the maintenance of an improperly insulated guy line was a pre-existing dangerous condition. *Id.* The guy

line in question went into the ground at an angle and continued underground at an angle. *Id.* The plaintiff was not aware that it continued underground at such an angle. *Id.* There also was evidence Shell had assured the contractor that the ditch line was not going to run into the guy line. *Id.*

McCaughtry argues that just as the uninsulated guy line located in close proximity to the work site was a pre-existing dangerous condition in *Edwards,* so too was the location of the light standard—nine and one-half feet from the power line—particularly when Barwood had contracted to have the light standard painted. We find, however, *Edwards* is distinguishable from the facts of this case. In *Edwards,* the court specifically found the condition was dangerous because the guy line was not properly insulated and the line continued underground at an angle of which the plaintiff was not aware. Also, Shell had assured the plaintiff's employer that the ditch would not run into the guy line. Here, there is no evidence showing either (1) the power line was in poor condition or it was any way not visible, or (2) that Barwood made any representations regarding the location of the power line with respect to the light standard.

McCaughtry further argues the mere observation of the location of a power line is not sufficient to charge the invitee with knowledge of a dangerous condition. *See Sun Oil Co. v. Massey,* 594 S.W.2d 125 (Tex.Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). In *Sun Oil Co.,* the plaintiff, while working on a workover crew servicing an oil well owned by Sun Oil, which was powered by electricity from a visible high voltage power line, received severe injuries when he was electrocuted. *Id.* at 127. In order to anchor the rig so that it would not topple over, the crew ran guy wires from the top of the derrick to the ground. *Id.* While the crew was in the process of running the fourth guy line, the cable the crew was using came into contact with a power line. *Id.* There was testimony the crew had been misled by

5. In support of this assertion, McCaughtry cites to the deposition testimony of Bryon Forney (Forney), manager of Barwood at the time of the accident, wherein Forney acknowledges (1) the closer in proximity of the power line to the light standard, the more danger existed; (2) even

though he knew of the presence of the power line and of the potential danger, he did not warn McCaughtry that caution should be exercised around the power line; and (3) he did not inquire into whether the power line would pose any problem with painting the light standards.

Sun Oil into believing that power in the lines had been shut off. *Id.* at 128. Sun Oil argued the well-site was safe because the power line was visible. *Id.*

The court observed that "the hazard posed by the live power lines was not obvious despite their visibility since the location of the lines was only one component of the danger, the other being that they were charged with electricity." *Id.* The court concluded the accident would not have happened either if the lines had been located farther away from the well or if the current had been turned off. *Id.* The court further found the evidence showed Sun Oil was at least partially responsible for the initial placing of the power lines unusually close to the well. *Id.* Thus, the evidence supported the jury's finding that (1) Sun Oil had created or maintained a dangerous condition, (2) it failed to make the premises safe, and (3) its failure was a proximate cause of the accident. *Id.*

*Sun Oil Co.* is also distinguishable from this case. First, a Sun Oil employee had represented that the power line had been de-energized.[6] Second, Sun Oil was at least initially responsible for placing the power line so close to the well. Here, there is no evidence Barwood was responsible for the location of the power line. Indeed, Forney testified he did not know if the power line had been installed prior to the installation of the light standards on the Barwood property. Moreover, McCaughtry has not even alleged that Barwood made any representation that it had made arrangements to de-energize the power line.

Finally, citing to *Rucker v. Sherman Oil & Cotton Co.*, McCaughtry asserts the party who maintains "electrical wires, over which a high voltage of electricity is conveyed, rendering them highly dangerous to others, is under the duty of using the necessary care and prudence at places where others may have the right to go, either for work, business or pleasure, to prevent injury." 29 Tex.Civ.App. 418, 68 S.W. 818 (1902, no writ). *Rucker*, however, is inapposite. The issue in

*Rucker* concerned the liability of the owner of the power line, not the liability of the owner or occupier of the premises through which the line ran.

Barwood asserts McCaughtry's injuries did not arise from a defect in the premises, but rather, from McCaughtry's work itself, for which Barwood had no control. Therefore, no duty to warn arose. Barwood argues it was not possible for a person to come into contact with the power line because it was suspended twenty-five feet over the ground. McCaughtry's standing on the scaffold combined with the use of a paint roller with an extended handle enabled him to come into contact with the power line. Barwood cites two courts of appeals summary judgment cases addressing facts analogous to those of this case, each finding there was no premise defect and, therefore, no duty to warn.

First, in *Corpus v. K–J Oil Co.*, the plaintiff, an employee of an independent contractor hired to "pull" a well, which included removing pipe and other underground equipment from the well, suffered severe injuries when the workover rig boom touched an overhead electric power line. 720 S.W.2d 672, 673 (Tex.App.—Austin 1986, writ ref'd n.r.e). The court concluded the power line, as constructed, was not dangerous to those working below until the foreman caused the boom to come into contact with or in close proximity to the power line. *Id.* at 674. The power line was not a hidden danger on the premises. *Id.* at 674–75. The court stated the fact that the foremen and other crewmen "were not paying attention [to the location of the power line] did not change the presence of the high line from a reasonably apparent condition into a dangerous condition about which the occupier of the premises had a duty to warn." *Id.* at 675. Because the danger arose from the performance of the independent contractor's work, the occupier of the premises owed no duty to warn. *Id.* at 674.

---

**6.** A surviving crew member testified that a Sun Oil employee had represented to the foreman, within the hearing of the crew members, that the "well would be ready to be worked on," which he and the other members of the crew assumed to mean the power to the line would be turned off. *Sun Oil Co.*, 594 S.W.2d at 129.

Second, in *Bryant v. Gulf Oil Corp.*, an employee of an independent contractor hired by the defendant was electrocuted when the gin pole on a workover unit touched an electrical wire during a well-repair job. 694 S.W.2d 443, 444–45 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.). The workover unit had a "gin pole" which could telescope out to sixty feet in height. *Id.* at 444. The court, noting Gulf Oil did not have control over the installation or maintenance of the high line, held the power line did not become dangerous to those working below until the independent contractor's employee caused the gin pole to contact it. *Id.* at 446.

Under the reasoning set forth in *Corpus* and *Bryant*, we conclude the proximity of the power line to the light standard does not constitute a premise defect. McCaughtry's injuries, therefore, were caused by the performance of the his duties in painting the light standard. Generally, the owner or occupier of the premises is not responsible for injuries arising from an activity being performed by an independent contractor. *See Abalos*, 544 S.W.2d at 631. In order to hold Barwood liable for his injuries arising from his work on the Barwood property, McCaughtry must show that his case falls within an exception to this general rule of liability.

### B. Inherently Dangerous Activity

 McCaughtry argues that engaging a contractor to perform inherently dangerous work or work involving a non-delegable duty does not relieve a landowner of liability, regardless of the landowner's actual control over the work or the premises while the work is being performed. *See Dupree v. Piggly Wiggly Shop Rite Foods, Inc.*, 542 S.W.2d 882, 887–88 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). While "there is inherent danger in working around live wires," there is no evidence, however, indicating McCaughtry did not know of the potential danger of working close to a power line. *See Shell Oil Co. v. Songer*, 710 S.W.2d 615, 620 (Tex.App.—Houston [1 st Dist.] 1986, writ ref'd n.r.e.). Barwood was not required to anticipate the methods by which C.L. Sports,

an independent contractor, would use to paint the light standards. *Id.*

Moreover, McCaughtry cites no authority that working in the proximity of a power line, in and of itself, is a non-delegable duty. To the contrary, case law suggests otherwise. *See Corpus*, 720 S.W.2d at 674 (noting the power line did not become dangerous to those working below until the workover rig's boom was caused to come into contact with or in close proximity to the line); *Bryant*, 694 S.W.2d at 446 (same).

### C. Control Over Work Details

 Next, McCaughtry contends Barwood is liable because it exercised control over the details and manner of his and Espinoza's work refurbishing the tennis court. In support of this assertion, McCaughtry relies on Espinoza's deposition testimony wherein he states the chairwoman of Barwood instructed them on what needed to be painted or the way in which the painting should be done:

Q. Now, before the accident, did you personally talk to anyone from Barwood Homes about this job?

\* \* \*

A. There was a lady, a chairman of the Barwood Association. She would just come and, you know, look around and see, what we were doing, you know.

Q. What did you hear her say about this job prior to the accident?

A. No. She would just say, "This needs to be painted," or, "Do it this way," or something like that. Anyway, she is representing Barwood, so I will have to listen to her.

Q. Was she pointing out maybe a missed spot in the paint?

A. Probably. I mean it's not like I saw her several times. If I saw her, it was probably—if I talked to her, it was probably once or twice at the most.

The above testimony reflects that Barwood merely checked the progress of McCaughtry's and Espinoza's work. In *Bryant*, the court found where a supervisor employed by the owner of the premises who visited the

crew at the work site to "see how they [were] doing with the job, if they [were] working or goofing off, [or] see if they've got any problem," was not sufficient to establish that the defendant had control over the details of the work to establish liability. 694 S.W.2d at 448. Moreover, Littlefield testified that no one other than he and McCaughtry directed any of the details of work or how the work was to done. Also, Barwood did not provide any of the tools or equipment used in that job. McCaughtry has failed to establish the requisite control over the details of his and Espinoza's work to establish Barwood's liability for his injuries.

McCaughtry has failed to raise any fact issues regarding Barwood's allegedly maintaining a premise defect and its duty to warn him of that defect. Furthermore, McCaughtry has not shown that his work in working in the vicinity of the power line is a nondelegable duty or that Barwood maintained control over the manner in which the refurbishment of the tennis courts was to be done. Thus, McCaughtry's second and third points of error are overruled. McCaughtry's first point of error also is overruled to the extent it concerns his premise defect claim.

## IV. Responsible Party

■ McCaughtry, in his fourth point of error, asserts it was error for the trial court to grant summary judgment in favor of Barwood on its negligence *per se* claim for failing to contact HL & P for the temporary de-energization of the power line. Similarly, HL & P, in its sole point of error, contends that the trial court erred in granting summary judgment on its indemnification claim because Barwood was a responsible party for the work being performed near the power line and, therefore, had a duty to contact HL & P for the de-energization of the power line.

The policy behind TEX. HEALTH & SAFETY CODE ANN. § 752.001 *et seq.* is to "insure the safety of persons engaged in activities near high voltage lines." *Ringo v. Gulf States Util. Co.*, 569 S.W.2d 31, 35 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.). The pur-

pose of the indemnification provision, § 752.008, is to place liability for losses resulting from noncompliance with the notification and safety provisions on the "person . . . responsible" for having workers near a power line. *Martinez v. Gulf States Util. Co.*, 864 S.W.2d 802, 805 (Tex.App.—Houston [14th Dist.] 1993, writ denied).

The United States Court of Appeals for the Fifth Circuit, in *Hullum v. Skyhook Corp.*, interpreting TEX.REV.CIV. STAT. art. 1436c (codified at TEX. HEALTH & SAFETY CODE ANN. § 752.001 *et seq.*)[7], defined "party responsible." 753 F.2d 1334, 1337 (5th Cir. 1985). The court explained the introductory phrase " 'When any person . . . *desires to temporarily carry on* any . . . work . . . in closer proximity to any high voltage overhead line than permitted by this Act, the person or persons responsible for the work to be done shall . . . ,' " focuses on the parties who "desire to temporarily carry on the work and who therefore exercise some degree of control over the work site." *Id.* (emphasis in the original) (quoting TEX.REV.CIV. STAT. ANN. 1436c). Focusing liability on parties who exercise "some degree of control" over the work site advances the Texas legislature's policy of worker safety because those parties have knowledge of where the work is to be done and, therefore, will most likely know whether or not the work will be performed near a power line. *Id.* On the other hand, placing liability on parties who do not exercise "at least some control" over the work site, lays the burden on the parties who do not determine the location of the work site or its proximity to a power line. *Id.*

In *Hullum*, Exxon hired Bright Sign Co., the plaintiff's employer, to install a sign on a service station operated by James Fennell who had subleased the property from Pogue Oil Co. *Id.* at 1336. Exxon owned no interest in Fennell's station or the property on which the station was located. Pogue Oil, a distributor of petroleum products, contracted with Exxon for the purchase of Exxon products and then sold Exxon's products to stations like the one Fennell operated. Exxon owned

---

7. We note the codification of article 1436c into TEX. HEALTH & SAFETY CODE ANN. ch. 752 was without substantive change.

no interest in Pogue Oil. As part this arrangement, Pogue could require Exxon to furnish Exxon signs at the stations where Exxon's products were sold. Pogue requested that Exxon place a sign on the premises of Fennell's station. Exxon, in turn, hired Bright Sign to erect the sign. After this, Exxon had no further involvement with the sign at Fennell's station. Bright Sign sent a crew to erect the sign. The crew contacted Pogue and Fennell with regard to the exact location of the sign. It was either Pogue or Fennell who determined the placement of the sign, which was in close proximity to an overhead power line. When the boom of the truck being used to erect the sign came into contact with the power line, the plaintiff was injured.

The Fifth Circuit found under the circumstances that Exxon did not exercise "some degree of control" over the work site and, therefore, was not a "responsible party." *Id.* at 1338. The court observed that under its arrangement with Pogue Oil, Exxon ·had no (1) knowledge of the specific proposed location of the sign; (2) employees present at the work site; (3) involvement after it hired Bright sign; and (4) ownership interest in the station or the property. *Id.* The court concluded that without such involvement, it was not error for the district court to hold that Exxon was not negligent *per se* under 1436c. *Id.*

Barwood contends that like Exxon, it decided to have its light standards painted and hired C.L. Sports for the job and, therefore, was responsible for having C.L. Sports on its premises. Barwood further asserts that like Exxon, that is where its involvement ended. Barwood maintains it was not responsible for how or where the work was conducted—such as using paint rollers with extending handles, while standing on a twenty-five-foot scaffold.

We believe, however, that the facts of this case suggest Barwood's involvement went further than Exxon's involvement in *Hullum.* Here, unlike Exxon, Barwood owned the property and controlled the common areas, including the tennis court. Unlike Exxon,

Barwood representatives were at the work site on occasion and observed the work being performed. Unlike Exxon, Barwood controlled access to the area around the tennis court. Moreover, Barwood, at the request of Littlefield, closed the tennis court for use during the refurbishment work.[8] Under *Hullum,* there is, at a minimum, an issue of material fact regarding whether Barwood exercised at least "some" control over the work site for purposes of chapter 752.

Barwood argues it was not in a position to foresee the risk of McCaughtry coming into contact with the power line or to take steps to avoid it. Barwood maintains that the parties who controlled how and where McCaughtry would perform his work and, who, in turn, had reason to know that McCaughtry would be working in close proximity to the power line, were Littlefield and McCaughtry. HL & P asserts Barwood may not rely upon common law "defenses" or excuses such as independent contractor liability for noncompliance with chapter 752.

This court has previously addressed whether an excuse which would relieve a tort feasor of liability in a cause of action for negligence *per se* would also relieve a party of liability for non-compliance with chapter 752. *See Martinez,* 864 S.W.2d at 804–05. In *Martinez,* the estates of workers, who were killed when a long pipe they were using to repair a well came into contact with a high voltage power line, sued Gulf States and the owner of the property. *Id.* at 803.

On appeal, it was argued the property owner was excused from non-compliance with chapter 752 because she was not aware of the existence of the power line because it was hidden by trees. The *Martinez* court noted an excuse such as "no knowledge of occasion for compliance," which was recognized by the Texas Supreme Court as a legally accepted excuse in a negligence *per se* claim, was not an excuse which would relieve a party of liability under chapter 752. *Id.* at 805:

> .... Appellants' assertion rests on the assumption that a valid excuse of a negli-

---

8. Barwood argues it merely "acquiesced" in Littlefield's request to close access to the tennis court.

gence per se tort action will also excuse the ramifications for noncompliance provided in chapter 752 of the Health and Safety Code.

We do not believe this is a correct assumption with regard to the indemnity provision of chapter 752 of the Health and Safety code.

*Id.* The court held an excuse will not affect the indemnification rights of an owner or operator of a power line because it would defeat the legislature's apportionment of loss for accidents of this nature.[9]

Barwood asserts *Martinez* is inapposite. Barwood contends that unlike *Martinez* wherein it was not disputed that the owner of the premises was a responsible party, Barwood is not a responsible party. Because we have already concluded there is a fact issue regarding Barwood's status as a responsible party, this argument is without merit. Here, Barwood may not rely on any excuses to avoid the indemnification provision of chapter 752. Hence, HL & P's sole point of error and McCaughtry's fourth point of error and first point of error to the extent it concern's Barwoods alleged violation of chapter 752 are sustained.

Accordingly, we affirm in part the judgment of the trial court and reverse and remand the remainder of this cause to the trial court for proceedings consistent with this opinion.

---

9. The court, however, declined to address whether an excuse would be available to the party responsible in tort for a violation of chapter 752 or whether the proffered excuse would be legally acceptable because it was not necessary to the disposition of the appeal.