Barry Max BRYANT, Appellant,

v.

GULF OIL CORPORATION, et al., Appellees.

No. 07–84–0047–CV.

Court of Appeals of Texas, Amarillo.

June 19, 1985.

Rehearing Denied July 31, 1985.

**444**

B.D. Geeslin Law Office, C. Ed Carrithers, Brady, Terry P. Ayre, Webster, for appellant.

Gibson, Ochsner & Adkins, A.B. Hankins, Morris, Moore, Dalrymple, Moss & Dyson, Charles E. Moss, Amarillo, for appellees.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

Appellant Barry Max Bryant (Bryant) brings this appeal from a summary judgment in favor of appellee Gulf Oil Corporation (Gulf). We affirm the judgment of the trial court.

The suit giving rise to this appeal was one seeking recovery for personal injuries. The nature of the appeal requires a resume of the summary judgment evidence. Bryant was a member of a three-man crew which was employed by Flint Engineering Company (Flint). On June 15, 1981, Gulf had employed Flint to perform some well repair on KSAM No. 3–10, a well situated upon a lease owned by Gulf. The well repair, which was performed by Bryant's crew, necessitated the use of a mobile oil well workover unit.

The workover unit consisted of a truck chassis with a cable operated gin pole attached to the rear. When the unit was in motion, the gin pole rested on the truck parallel to the ground. When working a well, the pole was raised and could be telescoped to a height of approximately sixty feet. The overall length of the unit, with the pole parallel to the ground, was approximately forty-one feet.

The crew reported to KSAM No. 3–10 on June 15, 1981 to perform the repair work. The Greenbelt Electric Cooperative, Inc. had constructed a high voltage electrical transmission line across the land upon which the well was drilled. The nearest wire was located some forty-nine to fifty-six feet from the wellhead. Upon arrival at the well on June 15, 1981, Richard Ratliff, Bryant's foreman, backed the unit over the well, raised the gin pole and commenced the repair. Appellant testified, with reference to the highline, "Oh, I'm sure we probably noticed it." The repair work was finished on the afternoon of June 17, 1981. During the work, a break had occurred on the crown of the gin pole which necessitated the services of a welder. Ratliff left the well site to meet the welder and show him the way to the well location. During Ratliff's absence, Bryant moved the workover unit sixteen feet away from the well. When Ratliff returned, he scoped the gin pole to its lowest height of thirty feet. He then started lowering the gin pole to its resting position on the unit. As the pole was being lowered, Bryant was holding a steel cable which was attached to

the end of the gin pole and served as a guide in lowering it. When Ratliff lowered the gin pole, it came into contact with the highline and electricity came down the line to Bryant, causing the severe injuries which are the subject of this suit.

It is also necessary to note the history of the well and highline in question. The lease was executed on December 3, 1932, by T.J. D'Spain and wife Lena M. D'Spain to J.A. Batson. The well in question was completed on June 19, 1934. On December 2, 1948, Lena D'Spain, the owner of the real estate at that time, granted an easement to the Greenbelt Electric Cooperative, Inc. The easement granted Greenbelt the right to "place, construct, operate, repair, maintain, relocate and replace thereupon ... an electric transmission or distribution line or system...." The highline was constructed in 1956. Gulf acquired the lease under which the well is operated on July 1, 1978. The access road to the well has remained in its present location since the completion of the well.

[1–3] In summary judgment cases, the judgment granted should be affirmed only if the record establishes a right thereto as a matter of law and the movant establishes that he is entitled to the judgment by reason of the matters set out in the motion. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979); *Harrington v. Young Men's Christian Ass'n of Houston,* 452 S.W.2d 423, 424 (Tex.1970); *Gibbs v. General Motors Corporation,* 450 S.W.2d 827, 828 (Tex.1970). The burden of demonstrating the lack of a genuine issue of material fact is upon the movant and all doubts are resolved against him. *Womack v. Allstate Insurance Company,* 156 Tex. 467, 296 S.W.2d 233, 235 (1956); *Durham v. Cannan Communications, Inc.,* 645 S.W.2d 845, 852 (Tex.App.—Amarillo 1982, writ dism'd). Thus, in order to prevail on summary judgment, a defendant must conclusively disprove the plaintiff's cause of action or he must establish one or more of his defenses as a matter of law. *Fulenwider v. City of Teague,* 680

S.W.2d 582, 584 (Tex.App.—Waco 1984, no writ).

In four points, Bryant asserts that the trial court erred in granting the summary judgment because material issues of fact existed as to whether: (1) the transmission line located forty-nine feet from the wellhead constituted a dangerous condition of which Bryant was aware; (2) Bryant's conduct was reasonable even if he had actual knowledge of the existence of the transmission line; (3) the transmission line was an open and obvious hazard existing prior to Bryant's entry onto the premises and (4) regular safety inspections at the wellhead site by Gulf's production supervisors created a duty on Gulf concurrent with that of Bryant's employer to oversee the safety of the work operations, which Gulf failed to do.

■ It is axiomatic that in order to establish tort liability on the part of a defendant, a plaintiff must prove the existence and violation of a legal duty owed him by that defendant. *Coleman v. Hudson Gas and Oil Corporation,* 455 S.W.2d 701, 702 (Tex.1970). That basic concept was not changed by the court's decision in *Parker v. Highland Park, Inc.,* 565 S.W.2d 512 (Tex.1978). Prior to *Parker,* a plaintiff was not only required to establish a duty owed and violation of that duty by a defendant but he must additionally "prove the absence of his own subjective knowledge and appreciation of any danger," *i.e.,* to negate "no duty." *Id.* at 516. The *Parker* court abolished the additional requirement but did not change the underlying obligation to establish a duty on the part of a defendant and a violation of that duty. *See Dixon v. Van Waters and Rogers,* 682 S.W.2d 533 (Tex.1984). Gulf contends that "under the undisputed facts in this case there is no evidence to prove the existence and violation of a legal duty" owed to Bryant by Gulf.

■ The general rule applicable to owner/occupier situations such as here existent is that such an owner/occupier is not an insurer, and where an individual's injury arises out of the performance of work for

which an independent contractor is employed and while that activity is being conducted by and under the control of that contractor, the duty to protect the employees of the contractor is that of the contractor and not of the owner/occupier. *Abalos v. Oil Development Co. of Texas,* 544 S.W.2d 627, 631 (Tex.1976); *Shell Chemical Company v. Lamb,* 493 S.W.2d 742, 746 (Tex.1973). However, there are two exceptions to this general rule, upon which Bryant predicates his claim as to Gulf's liability.

■ The first such exception exists when a defendant is an occupier of land and the plaintiff is an invitee: such a defendant owes a duty to exercise ordinary care to maintain the premises in a reasonably safe condition or to warn the invitee of any dangerous conditions which the occupier knows or should know about and which are not reasonably apparent to the invitee. *Sun Oil Co. v. Massey,* 594 S.W.2d 125, 128–29 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). The rationale for the occupier's duty in this situation is the occupier's superior position to know of or to discover hidden or dangerous conditions on his premises. *Shell Chemical Co. v. Lamb,* 493 S.W.2d at 747. It is upon this exception that Bryant places primary emphasis.

In support of his argument, Bryant emphasizes: (1) the proximity (forty-nine feet) of the highline to the wellhead; (2) the size of the workover unit (forty to forty-five feet long, with a gin pole, scoped down, thirty to thirty-five feet long) and (3) Gulf's maintaining only one way of ingress and egress to the well, requiring the workover rig to position itself directly perpendicular to the transmission line during workover operations and scope down procedure. This was especially dangerous, he says, because in order to scope down the gin pole, the rig had to be moved five to six feet toward the transmission line. That necessity made the shutting down procedure more dangerous than the setting up procedure, he continues, since the gin pole would certainly come within ten feet of a transmission line. The cumulative effect of all of this, Bryant reasons, is to at least establish fact questions as to Gulf's knowledge of a dangerous condition not readily apparent to its invitee, which would give rise to a duty to exercise ordinary care to maintain the premises in a safe condition or to give reasonable warning of the condition to an invitee. Ancillary thereto would be the question of whether Gulf failed to exercise the requisite degree of care.

■ The existence of a legal duty under a given statement of facts and circumstances is essentially a question of law for the court. *Gray v. Baker & Taylor Drilling Co.,* 602 S.W.2d 64, 65 (Tex.Civ.App.— Amarillo 1980, writ ref'd n.r.e.) (opinion on motion for rehearing). In this case, it is uncontroverted that the transmission line was constructed by Greenbelt under an easement which allowed it to determine the location of the line. The line was constructed twenty-two years after the drilling of KSAM No. 3–10 and, ironically, twenty-two years prior to the time that Gulf acquired its leasehold right. There had been no other accidents of this nature and no such personal injuries during Gulf's tenure. The transmission line did not connect to nor furnish the power for the operation of the well.

■ Gulf had no control over the installation or the maintenance of the highline. Moreover, the line, as constructed, did not become dangerous to those working below until Bryant's team leader, uncontrovertedly the employee of an independent contractor, caused the gin pole to come into contact with the line. An occupier of premises can assume that a contractor will perform his responsibilities in a safe and workmanlike manner, taking proper care and precautions to assure the safety of his employees. *Jenkins v. Fritzler Development Corp.,* 580 S.W.2d 63, 65 (Tex.Civ.App.— Houston [1st Dist.] 1979, writ ref'd n.r.e.). Absent exceptional circumstances, an occupier of premises has no duty to warn an independent contractor's employees of dangers which arise from the performance of their work. *Id.* There are no such excep-

tional circumstances existent in this case and none which would impose liability upon Gulf under this exception.

In his argument to the contrary, Bryant places heavy reliance upon the cases of *Edwards v. Shell Oil Company*, 611 S.W.2d 904 (Tex.Civ.App.—Eastland 1981, writ ref'd n.r.e.) and *Sun Oil Company v. Massey*, 594 S.W.2d 125 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). We believe these cases can be distinguished.

In *Sun Oil Company*, the plaintiff was also an employee of an independent contractor. In the course of well workover operations, the crew was required to run guy wires from the top of the derrick to the ground. They had strung out and anchored several such wires and were in the process of running another when the cable the crew was handling came into contact with a power line. However, in that case the power line in question was supplying electricity to the well pump. The court commented that there was evidence that Sun was at least partly responsible for the initial placing of the power line unusually close to the well and that Sun had sufficient control that it could have arranged for the electricity to be temporarily disconnected. The evidence in the instant case establishes that Gulf had no control over the power line in question and the line did not even service this well. Moreover, though Bennie Reeves, Greenbelt's area service representative, testified that if he had been notified prior to the work being done, he would have gone out there to make sure everything was done safely, there is no evidence that Gulf could have arranged for the interruption of electricity on the instant power line.

In *Edwards*, the plaintiff again was an employee of an independent contractor employed by Shell to construct a pipeline on premises controlled and maintained by Shell. He was operating a ditching machine which dug up a guy line anchor causing the loose guy line to come into contact with a high voltage electrical line. Edwards either touched the guy line or it arced, causing his injuries. However, in that case there was evidence that the guy line was either uninsulated or inadequately insulated at the time the plaintiff came upon the property. The evidence also showed that Shell had accepted the electrical system in question some two years before the accident and the court, in reversing a directed verdict for the defendant, noted that there was some evidence that Shell negligently maintained the line in question. Again, there is no evidence in the case before us that Gulf had any control over or supervision of the line in question.

The second exception to the general rule of occupier nonliability exists when the employer exercises control over and directs the details of the performance of the independent contractor's work. *Shell Oil Company v. Waxler*, 652 S.W.2d 454, 457 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.); *Remuda Oil & Gas Co. v. Nobles*, 613 S.W.2d 312, 315 (Tex.Civ. App.—Fort Worth 1981, no writ); *J.A. Robinson Sons, Inc. v. Ellis*, 412 S.W.2d 728, 735 (Tex.Civ.App.—Amarillo 1967, writ ref'd n.r.e.). In such a case, the employer must exercise reasonable care for the safety of employees of the independent contractor. *Allen v. Texas Electric Service Company*, 350 S.W.2d 866, 867–68 (Tex.Civ. App.—Fort Worth 1961, writ ref'd n.r.e.).

In support of his argument as to the applicability of this exception, Bryant places emphasis upon the deposition testimony of B.E. Hustead, a production supervisor for Gulf. He testified that the well in question had been "more or less" under his supervision since Gulf became operator of the well. He said he was responsible for seeing that necessary remedial work on wells under his supervision "gets done," and done properly. He regularly inspected the well sites and made sure that "High Voltage" signs were on the electric boxes and "Automatic Well Start" signs were on the well locations. If a well had problems and Gulf had no crew available, he would call on contractors such as Flint to do the work. In that event, he would visit the site

to "see how they are doing with the job, if they are working or goofing off, see if they've got any problems." He also testified that he had been on the job site in question earlier on the day the accident occurred. He was aware of the existence of the transmission line but "hadn't thought too much about it" and it did not cause him any concern.

■ We do note that our Supreme Court has recently adopted the rule enunciated in the Restatement (Second) of Torts § 414 (1977) which reads:

One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

*Living, Inc. v. Redinger*, 689 S.W.2d 415 (Tex.1985). However, in that case, the court commented that the employer's role must be more than a general right to order the work to start or stop, to inspect progress or to receive reports. We believe this characterization is a fair description of Gulf's role in the work process of its contractor.

There being no reversible error, the judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING

Appellant has filed a motion for rehearing in this cause. In the motion, he asserts eight assignments of error. In the first four assignments, he argues that this Court erred in overruling his original points of error one through four. In assignments five through seven, he asserts that we erred in affirming the trial court's judgment because: (1) as a matter of law Gulf owed Bryant, as an invitee, a duty to correct or to warn him of dangerous conditions existing on the premises; (2) there is no evidence that Bryant was injured from a danger arising from the performance of his work and (3) a fact issue existed as to whether Greenbelt would have stopped power to the transmission line if requested

by Gulf to do so. We remain convinced that the disposition we have previously made of the matters covered in these assignments is correct and we overrule them.

In assignment eight, Bryant asserts that we erred in affirming the trial court's judgment because as a matter of law Gulf retained the power to direct the independent contractor's activity. In argument under this assignment, he says we "somehow" overlooked and failed to cite "the key evidence presented in appellant's supplemental brief which establishes Gulf's retention of power to direct and order Barry Max Bryant's work." The testimony referred to is from a deposition of B.E. Hustead, a production supervisor for Gulf. It is as follows:

Q. In your job as a production supervisor for Gulf—and you went on a location where you were using—strictly using an outside service company, is it fair to say that part of your duties—I mean you could tell them what to do or how to do it?

A. Yes, sir.

Q. And you would expect them to do it?

A. Yes, sir.

Q. If they were goofing off, you would tell them to get to work and get the job going?

A. Yes, sir.

Q. If you thought that they were set up with a rig improperly or not the way they should be, do you feel you would have an authority and, perhaps, a duty to tell them to set up or do the work in a different manner?

A. Yes, sir, on most situations, yes, sir.

■ At best, this testimony would only create a fact question as to whether Gulf might have retained the right to exercise over its independent contractor some control that is more than a general right to order the work to start or stop, to inspect progress or to receive reports. If this be the case, it was a factual issue not expressly presented to the trial court to avoid

Gulf's entitlement to a summary judgment. Therefore, it cannot be considered on appeal as a ground for reversal. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 676–78 (Tex.1979).

We remain convinced that our original disposition of this case is correct. Bryant's motion for rehearing is overruled.