Opinion issued May 27, 2004 
     





In The
Court of Appeals
For The
First District of Texas




NO. 01-00-01054-CV




CHRISTOPHER SHAWN WOOD, INDIVIDUALLY AND AS NEXT
FRIEND OF SLADE ZACCHARIA WOOD, Appellant

V.

PHONOSCOPE, LTD.; PHONOSCOPE, INC.; AND PHONOSCOPE
MANAGEMENT, L.C., Appellees




On Appeal from the 165th District Court
Harris County, Texas
Trial Court Cause No. 98-27716




MEMORANDUM OPINION 
          Appellant, Christopher Shawn Wood, individually and as next friend of his
minor son, Slade Zacharia Wood, plaintiff in the trial court, brings this appeal to
challenge a summary judgment rendered in favor of appellees, Phonoscope, Ltd.,
Phonoscope, Inc., and Phonoscope Management, L.C. (Phonoscope), which became
final by a judgment entered after a trial on the merits against other defendants. In his
sole issue on appeal, Wood challenges the summary judgment rendered in favor of
Phonoscope by contending that the summary-judgment evidence raised issues of fact
and that the trial court granted summary judgment on causes of action that
Phonoscope did not address in moving for summary judgment. We affirm in part and
reverse and remand in part. 
Facts and Procedural History
          Phonoscope provides cable-television services in the Houston area. 
Phonoscope hired RNC Communications to install new fiber-optic cable to improve
its existing network system in the 5700 block of Ranchester on property owned by the
City of Houston, which had conferred a right-of-way ownership to Phonoscope. 
Consistent with its usual practice of relying on independent contractors to fulfill
Phonoscope contracts, RNC hired an independent contractor, Boyd Blythe, for the
Ranchester project. Blythe, in turn, hired Wood and others. Wood’s work included
climbing existing utility poles and operating out of a bucket on a “cherry picker”
truck to string new fiber-optic cable by “lashing” it to existing cable on the poles. 
RNC owned the truck.
          Wood had been working on the Ranchester job for only a few weeks when he
was seriously injured in an electrical contact accident while on the job. Wood was
working approximately 20 feet above ground level in the bucket portion of the cherry
picker when the truck either rolled or was driven backward, which caused the bucket
to come into contact with energized power lines. Wood sustained serious electrical
burns. 
          Wood sued Phonoscope, RNC, Blythe, and the driver of the truck, George
Eason, Jr., seeking damages for his injuries. Phonoscope moved for traditional
summary judgment under rule 166a(c), see Tex. R. Civ. P. 166a(c), contending that
it was entitled to judgment as a matter of law because Wood was an employee of an
independent contractor, to whom Phonoscope owed no legal duty. The trial court
initially denied Phonoscope’s motion, but later reconsidered that ruling and rendered
a take-nothing summary judgment in Phonoscope’s favor after rendering summary
judgment in favor of RNC. The case proceeded to a jury trial against Blythe and
Eason.


 The jury attributed negligence to Blythe (60%), Eason (28%) and Wood
(12%). In accordance with the jury’s verdict, the trial court rendered judgment
awarding Wood approximately $4.5 million in damages, interest, and costs.


 
 

Standard of Review
          We follow the usual standard of review for traditional summary judgments
granted under rule 166a(a) and (b) of the Rules of Civil Procedure, which requires
that the party with the burden of proof demonstrate that it is entitled to judgment by
establishing each element of its claim or defense as a matter of law or by negating an
element of a claim or defense of the opposing party as a matter of law. See Tex. R.
Civ. P. 166a(a), (b), (cmt.); Tex. Commerce Bank, N.A. v. Grizzle, 96 S.W.3d 240, 252
(Tex. 2002); Hartrick v. Great Am. Lloyds Ins. Co., 62 S.W.3d 270, 274 (Tex.
App.—Houston [1st Dist.] 2001, no pet.). In reviewing a summary judgment, we
decide the correctness of the trial court’s legal conclusion that the moving party was
entitled to judgment as a matter of law and therefore review that conclusion de novo. 
Gonzalez v. Am. Postal Workers Union, 948 S.W.2d 794, 797 (Tex. App.—San
Antonio 1997, writ denied). Like the trial court, we resolve every doubt and indulge
every reasonable inference in the nonmovant’s favor and take all evidence favorable
to the nonmovant as true. Grizzle, 96 S.W.3d at 252.
          Although interlocutory when first rendered, a partial summary judgment
becomes reviewable on appeal when, as here, the trial court renders a final judgment
that disposes of the whole case. See Newco Drilling Co. v. Weyand, 960 S.W.2d 654,
656 (Tex. 1998); State Farm Fire & Cas. Co. v. Griffin, 888 S.W.2d 150, 153 (Tex.
App.—Houston [1st Dist.] 1994, no writ); Waddell v. Huckabee, 807 S.W.2d 455,
459 (Tex. App.—Houston [1st Dist.] 1991, orig. proceeding). The partial, take-nothing summary judgment in favor of Phonoscope thus became final and appealable
when the trial court rendered its final judgment. See Newco Drilling, 960 S.W.2d at
656; Griffin, 888 S.W.2d at 153; Waddell, 807 S.W.2d at 459. In reviewing a partial
summary judgment granted before conclusion of the remainder of a case, we are
bound by the record as it existed when the summary judgment was signed and may
not consider evidence introduced thereafter. Pan Am. Petroleum Corp. v. Tex. Pac.
Coal & Oil Co., 324 S.W.2d 200, 201 (Tex. 1959); Griffin, 888 S.W.2d at 153. 
          A judgment that grants more relief than a party is entitled to receive is
erroneous and subject to reversal, but is not interlocutory for that reason alone. 
Lehmann v. Har-Con Corp., 39 S.W.3d 191, 200 (Tex. 2001). We review a summary
judgment that grants more relief than requested as we do any other final judgment and
do not reverse for that reason alone, as under prior law. See Bandera Elec. Coop.,
Inc. v. Gilchrist, 946 S.W.2d 336, 337 (Tex. 1997); Page v. Geller, 941 S.W.2d 101,
102 (Tex. 1997). Rather, the interests of judicial economy demand that we reverse
and remand as to those issues, but address the merits of the properly presented claims.
See Bandera, 946 S.W.2d at 337; Postive Feed, Inc. v. Guthmann, 4 S.W.3d 879, 881
(Tex. App.—Houston [1st Dist.] 1999, no pet.). 
Discussion
          In his sole issue on appeal, Wood challenges the summary judgment rendered
in favor of Phonoscope. Wood contends that the summary-judgment evidence raised
questions of fact concerning Phonoscope’s duty to Wood, specifically, concerning
Phonoscope’s right to control and its actual exercise of control over the work that
Wood and his coworkers performed. Wood further contends that Phonoscope owed
several nondelegable duties to Wood and was negligent per se, and that the trial court
erred by rendering summary judgment on causes of action that Phonoscope did not
address in moving for summary judgment. 
          The live pleadings against Phonoscope when the trial court rendered summary
judgment included the following claims, all of which are grounded in negligence, and
thus, in a legal duty owed to Wood: negligence; premises defect; negligent hiring of
RNC; and violation of a mandatory duty, under sections 752.002 through 752.006 of
the Health and Safety Code, to notify the electrical utility to de-energize electrical
power at the worksite. Tex. Health & Safety Code Ann. §§ 752.002, 752.003-.006 (Vernon 2003).
          The following, pertinent facts are undisputed: (1) Phonoscope was the owner
of the pole pursuant to a right-of-way conferred by the City of Houston; (2)
Phonoscope exercised the role of general contractor for the work of adding fiber-optic
cable to its existing cable-network system; (3) Phonoscope subcontracted the work
to the independent subcontractor, RNC; (4) RNC, in turn, subcontracted the work to
the independent contractor, Blythe, who hired Wood; and (5) except for an indemnity
and insurance agreement with RNC, Phonoscope did not enter into any written
contracts or agreements with any of the parties about the work to be done. 
A. Whether Phonoscope Owed Wood a Duty as General Contractor and Owner
          Phonoscope relied on settled, common law in asserting that it was entitled to
prevail as a matter of law against Wood’s negligence claims on the grounds that it
owed no duty to Wood.


 In a negligence action, a plaintiff must show that (1) the
defendant owed a duty to the plaintiff, (2) the defendant breached that duty, and (3)
the breach proximately caused the plaintiff's injuries. El Chico Corp. v. Poole, 732
S.W.2d 306, 311 (Tex. 1987). The existence of a duty owed is a threshold
consideration, Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995), and
is a question of law for the court. Tex. Home Mgmt., Inc. v. Peavy, 89 S.W.2d 30, 33
(Tex. 2002). 
          The principles that govern a general contractor’s duties to a subcontractor’s
employees determine whether Phonoscope, in its role as owner and general
contractor, owed a duty to Wood. See Dow Chem. Co. v. Bright, 89 S.W.3d 602, 605
(Tex. 2002). Because Phonoscope acted as the general contractor, Phonoscope owed
the same duty to Wood, an independent contractor’s employee, that a premises owner
owes to an independent contractor’s employee. See id. at 605-06; Koch Ref. Co. v.
Chapa, 11 S.W.3d 153, 155 n.1 (Tex. 1999). 
          1.       “Premises Defect” or “Negligent Activity”?
          As the easement owner of the pole premises, pursuant to the right-of-way
conferred by the City of Houston, Phonoscope could potentially incur liability for two
categories of cases: (1) a “premise-defect” case, in which a defect existed on the
premises when the independent contractor entered or was created through some
means unrelated to the injured employee or his employer; and (2) a “negligent
activity” case, in which the defect arises as a contemporaneous result of someone’s
negligence or through the independent contractor’s activity. See Bright, 89 S.W.3d
at 606; Coastal Marine Serv., Inc. v. Lawrence, 988 S.W.2d 223, 225 (Tex. 1999);
Williams v. Olivo, 952 S.W.2d 523, 527 (Tex. 1997). Whether a particular case
involves a “premises defect” or a “negligent activity” is a question of law. See
Bright, 89 S.W.3d at 606-07 (comparing and contrasting both types of cases in
summary-judgment context); Lawrence, 988 S.W.2d at 225 (same; further citing
supreme court’s legal conclusions categorizing case as one type or another in
analogous, directed-verdict context); Williams, 952 S.W.2d at 527 (rejecting
“negligent activity” category and categorizing case as involving “premises defect”). 
Phonoscope moved for summary judgment on the grounds that “negligent activity,”
rather than “premises defect,” principles controlled this case.
          In “premises defect” cases, the premises owner or general contractor has a duty
to inspect the premises and warn its independent contractor-invitees of dangerous
conditions that are not open and obvious and that the owner knows or should have
known exist. Lawrence, 988 S.W.2d at 225. In this category of cases, the danger
does not arise through the work activity of the independent contractor. Id.; see
Williams, 952 S.W.2d at 526-27 (holding that drill-pipe thread-protectors left on
ground by work crew during previous shift constituted premises defect); see also
McCaughtry v. Barwood Homes Ass’n, 981 S.W.2d 325, 333 (Tex. App.—Houston
[14th Dist.] 1998, pet. denied); Corpus v. K-J Oil Co., 720 S.W.2d 672, 674-75 (Tex.
App.—Austin 1986, writ ref’d, n.r.e.); Bryant v. Gulf Oil Corp., 694 S.W.2d 443,
444-45 (Tex. App.—Amarillo 1985, writ ref’d n.r.e.) (all concluding that proximity
of power line to work activity did not constitute “premise defect” that would trigger
owner’s or occupier’s duty to warn because danger did not arise until independent
contractor’s work activity). 
          In “negligent activity” cases, the dangerous condition arises because of the
independent contractor’s work activity. See Bright, 89 S.W.3d at 606-07 
(categorizing, as “negligent activity,” pipe that had been placed by fellow employee
and that fell and trapped plaintiff’s arm); Lawrence, 988 S.W.2d at 225 (categorizing
pinch-point area on crane that injured plaintiff as “negligent activity” because area
posed no danger until put into use in work activity); see also Hoechst-Celanese Corp.
v. Mendez, 967 S.W.2d 354, 355-56 (Tex. 1998) (employing “negligent activity”
analysis in context of injuries sustained by employee of independent contractor who
fell from shelf of metal tool box that employee had used instead of ladder). 
          The “negligent activity” category thus encompasses conditions that are not
dangerous until they are put into operation. See Lawrence, 988 S.W.2d at 225. Well-settled Texas law recognizes that power lines are not inherently dangerous in
themselves, although they may become dangerous because of the manner in which
independent contractors who come on premises perform their work duties. See
McCaughtry, 981 S.W.2d at 333; Corpus, 720 S.W.2d at 674-75; Bryant, 694 S.W.2d
at 444-45; see also Shell Oil Co. v. Songer; 710 S.W.2d 615, 620 (Tex. 
App.—Houston [1st Dist.] 1986, writ ref’d n.r.e.) (holding that although working
around live wires is inherently dangerous, duty to perform electrical repair safely was
on independent contractor in control of electrical repair work, whose employee
sustained injuries while performing repairs, rather than on owner-occupier). From
these principles, we agree with Phonoscope and conclude that this is a “negligent
activity”case. 
          2.       Duty Commensurate with Control in “Negligent Activity” Case
          A party seeking to impose liability in a “negligent activity” case can establish
a premises owner or operator’s right to control in the following two ways: (1)
evidence of a contractual agreement that explicitly assigns a right of control to the
owner or operator, or, if there is no contractual agreement, (2) evidence that the
owner or operator actually exercised control over the work. Lawrence, 988 S.W.2d
at 226. Although right of control can be shown by express contractual agreement or
evidence of actual control, a mere possibility of control does not establish that a
contractor actually retained or exercised a right of control. Id. 
          Because there was no written contract between Phonoscope and any of the
subcontractors here, other than the indemnity agreement between Phonoscope and
RNC, and thus no written instructions to subcontractors that could be construed as
Phonoscope’s retaining supervisory control, any duty that Phonoscope owed to Wood
is necessarily premised on a showing of actual exercise of control over the details of
Wood’s work, under the parameters defined by the supreme court in Bright,
Lawrence, and Mendez. See Bright, 89 S.W.3d at 607; Lawrence, 988 S.W.2d at 226;
Mendez, 967 S.W.2d at 355-56.


 
          Wood contends that Phonoscope owed him a duty because Phonoscope had
both a right to control and actually exercised control over the work done by Wood’s
work crew on the Ranchester project. In a “negligent activity” case, the owner,
occupier, or general contractor, here Phonoscope, has no general duty to see that its
independent contractors perform their work activity in a safe manner. See Bright, 89
S.W.3d at 606; Lawrence, 988 S.W.2d at 225; Mendez, 967 S.W.2d at 356. But when 
a contractor or owner actually exercises a right of supervisory control over the
employees of an independent subcontractor, that exercise of control may trigger
liability for injuries to those employees. Bright, 89 S.W.3d at 607; Lawrence, 988
S.W.2d at 225-26; Mendez, 967 S.W.2d at 356.


 
          To raise an issue of fact concerning Phonoscope’s actual exercise of control
over the manner in which Wood did his work, Wood had to show that Phonoscope
had more than a right to stop the work or order it resumed, to inspect or receive
progress reports, or to make suggestions, recommendations, or revisions that need not
necessarily be followed; control must rise to a level that would have precluded
Blythe’s, and thus Wood’s, complete freedom to do the work in his own way. See
Mendez, 967 S.W.2d at 356 (citing Restatement (Second) of Torts § 414 cmt. c). 
Liability for injuries to the employees of a subcontractor is commensurate with the
control retained over the “operative details” of the subcontractor’s work. Lee Lewis
Constr., Inc. v. Harrison, 70 S.W.3d 778, 783 (Tex. 2001); Mendez, 967 S.W.2d at
355-56.  
          To trigger liability, supervisory control must (1) relate to the activity that
caused the injury, (2) involve either the power to direct that the work be done in a
certain manner or forbid its being done in an unsafe manner, Lawrence, 988 S.W.2d
at 226, and (3) relate to the injury that the alleged negligence caused. Bright, 89
S.W.3d at 607; see Mendez, 967 S.W.2d at 356 (noting supreme court’s having
adopted section 414 of the Restatement (Second) of Torts and holding that same
requires “nexus” between duty of care and right of control). Essentially, the evidence
must give rise to an inference that the supervising entity specifically approved a
dangerous act. See Lee Lewis Constr., Inc., 70 S.W.3d at 783-84 (general
contractor’s supervisor approved lanyard fall-protection system and use of “bosun’s”
chair without independent lifeline and therefore retained right to control deceased
worker’s activity); see also Bright, 89 S.W.3d at 609 (“[W]e have never concluded
that a general contractor actually exercised control of a premises [when] there was no
prior knowledge of a dangerous condition and no specific approval of any dangerous
act.”) (Emphasis added.) 
          3.       Whether Wood Raised a Fact Issue on Control by Phonoscope
          Phonoscope moved for summary judgment on the grounds that it owed no duty
to Wood as a matter of law because Phonoscope neither had a contractual right of
control over the activities of its subcontractors, nor exercised actual control. 
Phonoscope supported its motion with several evidentiary exhibits. The first was the
affidavit of Phonoscope’s president, who acknowledged that RNC was to string a
particular type of cable for the Ranchester project, but denied any awareness that
Blythe, who employed Wood, was a subcontractor for the work. The president of
Phonoscope also denied providing detailed or specific instructions to anyone
concerning either the methods used to string the cable or how to operate the “bucket
truck.” Phonoscope also supported its motion with the affidavit of the president of
RNC, who (1) confirmed that RNC owned the bucket truck, (2) stated that Wood’s
activities were “exclusively under the control” of Blythe, RNC’s subcontractor, (3)
stated that RNC relied on its independent contractors’ expertise, (4) denied that RNC
directed its subcontractors’ work or the work of any of its subcontractors’ employees;
(5) denied that Phonoscope directed RNC’s work, and (6) further denied that
Phonoscope had ever provided RNC with any instructions concerning how to use the
bucket truck, how to string the cable, how to use the lasher equipment, or concerning
any other details or methods. No one from Phonoscope was present at the accident
scene, according to the affidavits. Additional summary-judgment evidence
established that RNC had only office personnel and had no “field employees” who
climbed poles, strung wire, or worked from a bucket truck to string wires on poles. 
          Based on this evidentiary showing, Phonoscope established that it did not
actually exercise control over the details of Wood’s work to the extent required to
trigger liability under the Bright, Lawrence, and Mendez cases and therefore
established that it was entitled to prevail as a matter of law on Wood’s claims that
Phonoscope was negligent in its role as general contractor, owner, or occupier of the
worksite premises. Accordingly, the burden shifted to Wood to raise a fact issue to
defeat that showing. See City of Houston v. Clear Creek Basin Auth., 589 S.W.2d
671, 678 (Tex. 1979); Marchal v. Webb, 859 S.W.2d 408, 412 (Tex. App.—Houston
[1st Dist.] 1993, writ denied). 
          In response to the contentions in Phonoscope’s motion for summary judgment
on the issue of control, Wood offered summary-judgment evidence of the following: 
(1) Phonoscope provided maps to its subcontractors, on which Blythe would
sometimes take notes of instructions provided by a Phonoscope representative; (2)
Phonoscope instructed its subcontractors to string fiber-optic cable on poles that
Phonoscope identified as Phonoscope’s poles; (3) Phonoscope instructed its
subcontractors concerning the type of fiber-optic cable to be used for projects,
including the Ranchester project; (4) Phonoscope required Blythe to check out fiber-optic cable from inventory at the Phonoscope facility and return any unused cable on
a daily basis; (5) Phonoscope limited subcontractor’s work to stringing and lashing
new fiber-optic cable, which other Phonoscope personnel would later splice and
connect; (6) Phonoscope did not permit subcontractors to do any splicing; (7) Blythe
received instruction from either of two Phonoscope representatives, Ray Browning
or Jim Cox; (8) Browning routinely rode with Blythe to indicate where the lines
should be run; (9) Browning visited the worksites from time to time, as often as twice
daily, to ensure that the cable was being strung properly; (10) Browning sometimes
stopped work being done by a crew to tell them to do it differently, for example to
string the cable somewhat higher on a pole. 
          Wood contends that his evidentiary response to Phonoscope’s motion for
summary judgment sufficiently raised triable issues of fact concerning Phonoscope’s
right of supervisory control because they showed that Blythe, and therefore Wood,
was not entirely free to do the work in his own way and, therefore, that Wood
defeated Phonoscope’s right to judgment as a matter of law. We disagree. 
          Wood offered no summary-judgment evidence to defeat Phonoscope’s
evidentiary showing that Blythe, and not Phonoscope or RNC, ultimately and
exclusively controlled Wood’s activities. Wood’s evidence showing that Blythe took
instructions from Browning or Cox tended to refute Phonoscope’s contention that it
gave no instructions at all on how to string the fiber-optic cable. It is nevertheless
undisputed that Phonoscope did not own the bucket truck—the movement of which
resulted in Wood’s injuries—never instructed anyone concerning either how to use
the bucket truck or how cabling and lashing was to be done while a crew member was
in the bucket, and had no representative present to give instructions when Wood was
injured. Likewise, the degree of participation by Phonoscope’s Browning or Cox
shown by Wood’s summary-judgment evidence does not give rise to any inference
to support Wood’s contention that Blythe, and thus Wood, was not free to “do the
work in his own way.” See Mendez, 967 S.W.2d at 356. 
          Wood’s response showed only that Browning’s or Cox’s instructions were to 
ensure that the work crews use the correct fiber-optic cable on the correct poles and
that they string and lash the cable so that the next work crew had only to complete the
work by splicing and connecting the wires. Nothing in the evidence showing that
Browning identified poles and locations on the poles suggests that Browning, or any
representative of Phonoscope, directed or required Wood or any subcontractor to
work within six feet of the power lines, one of the activities that Wood contends
resulted in his injuries. Likewise, nothing in the evidence relating to Browning or
Cox’s instructions, or any of the summary-judgment evidence that Wood offered,
shows or suggests that Phonoscope directed Wood or any subcontractor concerning
the two additional activities that Wood contends resulted in his injuries, specifically,
the details of using the bucket truck or how work was to be done while a crew
member was in the bucket.
          Under Lawrence, Bright, and Mendez, to overcome Phonoscope’s right to
judgment as a matter of law in its role of owner and general contractor for the
Ranchester project, Wood had to offer summary-judgment evidence that raised a
triable issue of fact sufficient to show a causal nexus between his injuries and any
supervisory control that Phonoscope either retained or actually exercised over the
operative details of his work. See Bright, 89 S.W.3d at 607-11 (rendering judgment
that injured worker take nothing, in accordance with summary judgment rendered by
trial court, after rejecting eight contentions on which worker premised arguments that
defendant exercised actual control); Lawrence, 988 S.W.2d at 226 (rendering
judgment, in accordance with directed verdict and take-nothing judgment rendered
by trial court, that survivors of worker whose head was crushed in pinch-point area
of crane take nothing, on grounds that no employees of owner of crane and premises
directed work on day of injury or at any other time, further noting that evidence that
workers would have taken direction if offered showed merely a “possibility” of
control and thus no “‘right to control’ actually retained or exercised”); Mendez, 967
S.W.2d at 358 (rendering judgment that injured worker take nothing, in accordance
with summary judgment rendered by trial court, on grounds that premises owner’s
requiring compliance with its safety standards did not rise to level imposing
unqualified duty on owner to ensure that workers did nothing unsafe); compare Lee
Lewis Constr., Inc., 70 S.W.3d at 784 (rejecting legal-sufficiency challenge to jury’s
finding that general contractor retained control over fall-protection systems at
worksite where worker died after fall, on grounds that contractor retained right to
control subcontractor’s fall-protection systems based on contractor’s superintendent’s
approving use of both lanyard fall-protection system and “bosun” chair without
independent lifeline). 
          Here, as in Bright, Lawrence, and Mendez, there was no fact issue raised to
suggest that Phonoscope specifically approved a dangerous act. See Bright, 89
S.W.3d at 609. We hold that Wood did not raise a triable issue of fact sufficient to
show a causal nexus between his injuries and any supervisory control either retained
or actually exercised by Phonoscope over the operative details of Wood’s work,
which thus defeated any claim that Phonoscope owed Wood a duty of care under the
common law. See Van Horn v. Chambers, 970 S.W.2d 542, 544 (Tex. 1998) (noting
that absence of recognized legal duty ends inquiry into negligence liability). Because
the summary-judgment record established that Phonoscope did not owe Wood a duty
of care based on Phonoscope’s status as general owner and contractor under the
common-law theories asserted by Wood, we conclude that the trial court properly
rendered summary judgment in favor of Phonoscope as owner and general contractor. 
B.Whether Phonoscope Owed Nondelegable Duties to Wood—Negligence
Per Se?
 
          Wood further contends that the trial court erred by rendering summary
judgment because Phonoscope did not establish that it was entitled to prevail as a
matter of law on the several, nondelegable duties that Wood claimed that Phonoscope
owed to him. Both the summary-judgment record and Wood’s and Phonoscope’s
arguments on appeal indicate that Wood further contends that Phonoscope was
negligent per se by not complying with these allegedly nondelegable duties. To the
extent that Wood contends that Phonoscope was negligent per se, we note that
negligence per se is a common-law doctrine that imposes a duty based on a standard
of conduct created by a penal statute rather than on the reasonably-prudent-person test
that governs pure negligence claims. Smith v. Merritt, 940 S.W.2d 602, 607 (Tex.
1997). The threshold inquiries in every negligence per se case are whether the
plaintiff belongs to the class that the statute was intended to protect and whether the
plaintiff’s injury is of a type that the statute was designed to prevent. Perry v. S.N.,
973 S.W.2d 301, 305 (Tex. 1998). 
          1.       Health and Safety Code Chapter 752
          Wood’s pleadings alleged that chapter 752 of the Health and Safety Code 
imposed nondelegable duties on Phonoscope to notify the electrical utility of the
cabling work to be done by Wood’s crew so that the high voltage lines could be de-energized. Issues of statutory construction raise questions of law that we properly
review de novo. Subaru of Am., Inc. v. David McDavid Nissan, Inc., 84 S.W.3d 212,
222 (Tex. 2002); see Fisher v. Lee & Chang P’ship, 16 S.W.3d 198, 200-02 (Tex.
App.—Houston [1st Dist.] 2000, pet. denied). 
          Section 752.004 restricts activities near high voltage overhead lines. Tex.
Health & Safety Code Ann. § 752.004 (Vernon 2003). If a person, who is
performing a function or activity on “land, a building, a highway, or other premises,”
may (1) “move or be placed within six feet of a high voltage overhead line while
performing the function or activity” or (2) “bring any part of a tool, equipment,
machine, or material within six feet of a high voltage overhead line while performing
the function or activity,” section 752.004 forbids “the person, firm, corporation or
association, either individually or through an agent or employee” from performing the
function or activity unless “the person, firm, corporation or association effectively
guards against danger by contact with the line as prescribed by [s]ection 752.003.” 
Id.
          Section 752.003 governs temporary clearance of high voltage overhead lines
and states, in part, as follows:
(a) A person, firm, corporation, or association responsible for
temporary work or a temporary activity or function closer to a high
voltage overhead line than the distances prescribed by this chapter must
notify the operator of the line at least 48 hours before the work begins.
 
(b) A person, firm, corporation, or association may not begin the
work, activity, or function under this section until the person, firm,
corporation, or association responsible for the work, activity, or function
and the owner or operator, or both, of the high voltage overhead line
have negotiated a satisfactory mutual arrangement to provide temporary
de-energization and grounding, temporary relocation or raising of the
line, or temporary mechanical barriers to separate and prevent contact
between the line and the material or equipment or the person performing
the work, activity, or function.
 
Id. § 752.003(a)-(b) (Vernon 2003). (Emphasis added.) The statute authorizes both
criminal penalties and damages for violations of chapter 752. Id. §§ 752.007, 752.008
(Vernon 2003). 
          Phonoscope moved for summary judgment on Wood’s chapter 752 claims by
contending that any liability was attributable to the subcontractor performing the work
because Phonoscope did not retain or exercise sufficient control over the work being
performed and was therefore not the responsible party to request temporary clearance
under section 752.003(a) or incur liability under section 752.008. Phonoscope also
argued that the statute did not apply to Wood because he was “an employee of an
electrical or communications contractor who [was] working under the contractor’s
supervision” and therefore exempted by the express language of section 752.002(a)
and (b)(6). Id. § 752.002(a), (b)(6) (Vernon 2003). Wood’s affidavit in response
included the following assertions: Phonoscope was the “party responsible for the
work,” and Wood’s work activity placed him within six feet of the high voltage lines. 
In the same affidavit, Wood denied that he was an employee of an electrical or
communications contractor.  
          Although Wood is among the class of those that chapter 752 was enacted to
protect, the statute does not state that it imposes a non-delegable duty. See Espinoza
v. Hicks, 984 S.W.2d 274, 277 (Tex. App.—El Paso 1988, no writ). As we held above
in addressing Wood’s common-law, negligence-based claims, Phonoscope established
both that it had no supervisory control and that it did not actually exercise control,
over the details of Wood’s work activity and was not even present on the day when
Wood was injured. Relying on Espinoza in Trail v. Friedrich, 77 S.W.3d 508 (Tex.
App.—Houston [1st Dist.] 2002, pet. denied), this Court held that the premises owner,
who had no right to direct the details of the contractor’s work, was not a “responsible”
party under sections 752.003(a) and (b). See Trail, 77 S.W.3d at 513 (citing Espinoza,
984 S.W.2d at 277); see also Espinoza, 984 S.W.2d at 277 (“We think it is clear . . .
that the legislature did not intend to place a non-delegable duty on landowners.”). 
          Thus, although chapter 752 was enacted to protect workers like Wood, sections
752.003(a) and (b) impose a duty on the party who is responsible for the work and
most knowledgeable about the need to notify the utility. See Trail, 77 S.W.3d at 513;
Espinoza, 984 S.W.2d at 277; see also Songer, 710 S.W.2d at 620-621 (holding, under
common-law principles, that independent contractor in control of installation was in
superior position than premises owner to eliminate dangerous condition by de-activating power lines). We conclude that Phonoscope established its right to prevail
as a matter of law on Wood’s chapter 752 claims. 
          2.       Phonoscope’s Franchise Agreement with City of Houston
          Wood’s pleadings alleged that Phonoscope’s franchise agreement with the City
of Houston triggered in Phonoscope a nondelegable,“high” duty of care to Wood. In
moving for summary judgment, Phonoscope raised two legal challenges to the asserted
duty. The first questioned whether Wood was an intended beneficiary of the franchise
agreement; the second questioned Wood’s authority or standing to enforce any
provision of that agreement. In response, Wood relied on paragraph L of the
agreement, which states the following:
Standard of Care. [Phonoscope] shall at all times employ a high
standard of care and shall install, maintain, and use approved methods
and devices for preventing failures or accidents which are likely to cause 
damages, injuries, or nuisances to the public. 
 
Wood also relied on excerpts from the deposition testimony by Phonoscope’s
president, in which she was questioned about the purpose of paragraph L and generally
agreed that Phonoscope should not “endanger” the lives of workmen installing
Phonoscope cables. 
          In support of his contention that the franchise agreement reflected a concern for
public safety and thus imposed a non-delegable duty on Phonoscope to Wood, Wood
relies on this Court’s opinion in Edwards v. Hammerly Oaks, Inc., 908 S.W.2d 270
(Tex. App.—Houston [1st Dist.] 1995), aff’d as modified, 958 S.W.2d 387 (Tex.
1997). In Edwards, in which a tenant who was assaulted by two employees of an
apartment complex sued the complex, we construed Houston City Ordinance § 10-343(b)(4) as imposing a duty “by law,” based on concerns of public safety, and
therefore concluded that the ordinance imposed on the managers of the Hammerly
Oaks apartment complex a nondelegable duty that triggered liability for their agents’
acts. Id. at 273. A key distinction between this case and Edwards, as well as the
authorities on which Edwards relies, is that the alleged duty here is not imposed “by 
law,” but pursuant to an agreement between two parties, the City of Houston and
Phonoscope. Because Wood was not a party to the agreement, Phonoscope correctly
asserted that he was required, but failed, to establish either that he had standing to
enforce the agreement or that he was a third-party beneficiary of the contract.



          Wood also relied on section 428 of the Restatement (Second) of Torts in
contending that the franchise agreement imposed a non-delegable duty on
Phonoscope. Section 428 provides as follows:
An individual or a corporation carrying on an activity which can be
lawfully carried on only under a franchise granted by public authority
and which involves an unreasonable risk of harm to others, is subject to
liability for physical harm caused to such others by the negligence of a
contractor employed to do work in carrying on the activity.
 
Restatement (Second) of Torts § 428 (1965 and Appendix 1986).


 In support of
this argument, however, Wood again asserts that his work was “inherently or
intrinsically dangerous” because it necessitated proximity to power lines. As
addressed above, settled Texas law rejects the premise that power lines are inherently
dangerous in themselves, while recognizing that they may become dangerous because
of the manner in which independent contractors who come on premises perform their
work duties. See McCaughtry, 981 S.W.2d at 333; Corpus, 720 S.W.2d at 674-75;
Songer; 710 S.W.2d at 620; Bryant, 694 S.W.2d at 444-45.
          We conclude that Phonoscope established that it was entitled to prevail as a
matter of law on Wood’s claim that the franchise agreement between Phonoscope and
the City of Houston created a high duty of care in Phonoscope in favor of Wood and
therefore conclude that the trial court properly granted summary judgment in favor of
Phonoscope on that claim. 
          3.       “Inherently Dangerous” Work and National Codes 
          Wood also contends that because Phonoscope placed its poles in a manner that
required him to work within close proximity to high-voltage power lines, his work was
inherently dangerous and thus triggered a nondelegable duty exception from the
general rule that a premises owner or contractor incurs no liability for work done by
an independent contractor. We again note that well-settled Texas law recognizes that
high-voltage lines are not inherently dangerous, but may become dangerous because
of the manner in which independent contractors who come on premises perform their
work duties. See McCaughtry, 981 S.W.2d at 333; Corpus, 720 S.W.2d at 674-75;
Songer; 710 S.W.2d at 620; Bryant, 694 S.W.2d at 444-45.
          In opposing Phonoscope’s motion for summary judgment, Wood relied on
expert testimony of B. Michael Aucoin, who averred, by affidavit, that the proximity
of Phonoscope’s cable and poles to high-voltage overhead power lines violated
unspecified provisions of several national administrative regulations and codes.


 As
Phonoscope explained in response, however, the regulations and codes to which
Aucoin referred impose obligations on employers for their employees. Moreover,
violation of a nonpenal administrative code statute does not establish a negligence per
se claim. See Pack v. Crossroads, Inc., 53 S.W.3d 492, 509-10 (Tex. App.—Fort
Worth 2001, pet. denied) (holding that trial court had properly rejected claim of
negligence per se premised on administrative regulation pertaining to nursing homes
on grounds that penalties were civil and not criminal in nature). 
          It is undisputed that Phonoscope did not employ Wood, and Wood has not
demonstrated that violations of any of the regulations or code on which his expert
relied were punishable as crimes. Accordingly, Wood’s summary judgment evidence
did not defeat Phonoscope’s right to judgment as a matter of law for alleged violations
of administrative regulations and codes. 
          We hold that Phonoscope established its right to summary judgment as a matter
of law on Wood’s claims that nondelegable duties were imposed on Phonoscope or
that Phonoscope was negligent per se. 
Summary Judgment on Claims Not Addressed in Phonoscope’s Motion
          As noted above, the trial court initially denied Phonoscope’s motion, but
Phonoscope reurged it, and Wood filed a response. The trial court then rendered a
take-nothing summary judgment in Phonoscope’s favor. In responding to
Phonoscope’s reurged motion, Wood pointed out that he had amended his pleadings
several times and claimed that Phonoscope’s reurged motion did not address those
claims. Phonoscope replied that all of Wood’s claims were negligence based and thus
adequately addressed and encompassed in Phonoscope’s reurged motion. On appeal,
Wood contends that Phonoscope’s failure to address his premises defect and negligent
hiring claims requires that we reverse the summary judgment. Phonoscope counters
that its no-duty ground is dispositive of both claims.
          It is “axiomatic” that a party may not prevail by a summary judgment on a cause
of action that the party does not address in moving for summary judgment. Chesser
v. Southwestern Bell Tel. Co., 658 S.W.2d 563, 564 (Tex. 1983); Clark v. Pruett, 820
S.W.2d 903, 907 (Tex. App.—Houston [1st Dist.] 1991, no writ); see also Tex. R.
Civ. P. 166a(c) (“Issues not expressly presented to the trial court by written motion,
answer, or other response shall not be considered on appeal as grounds for reversal.”) 
Therefore, when, as here, a plaintiff amends his pleadings after the defendant has
moved for summary judgment, the defendant must ordinarily file an amended motion
for summary judgment to be entitled to prevail on the entirety of the plaintiff’s case. 
Sosa v. Cent. Power & Light, 909 S.W.2d 893, 894-95 (Tex. 1995); Smith v. Atlantic
Richfield Co., 927 S.W.2d 85, 88 (Tex. App.—Houston [1st Dist.] 1996, writ denied). 
The portion of a final summary judgment that is rendered on the plaintiff’s entire case
under these circumstances must be reversed because the judgment grants more relief
than requested. See Lehmann, 39 S.W.3d at 200; Postive Feed, Inc., 4 S.W.3d at 881. 
          An exception applies, however, when the grounds initially asserted in moving
for summary judgment conclusively negate an element that is common to the
allegations asserted in an amended pleading. See Judwin Prop., Inc. v. Griggs &
Harrison, 911 S.W.2d 498, 502-03 (Tex. App.—Houston [1st Dist.] 1995, no writ). 
As in the trial court, Phonoscope contends that it conclusively negated any duty owed
to Wood and therefore defeated a necessary element of both the premises defect and
negligent hiring claims that Wood added in his amended pleading and, therefore, that
the exception applies. 
A.      “Premises Defect” 
          We agree with Phonoscope that its motion for summary judgment conclusively
negated Wood’s claims that Phonoscope owed him a duty under a “premises-defect”
theory of liability. Phonoscope’s motion for summary judgment addressed the two
possible theories under which, as owner and general contractor, Phonoscope could
become liable to Wood under the common law. These were the “premises defect” and
“negligent activity” theories of liability. In addition to explaining the circumstances
under which a particular theory would apply and explaining the scope of the duty
owed under each, Phonoscope argued that the “negligent activity” theory controlled
this case as a matter of law. As addressed above, whether a particular case involves
a “premises defect” or a “negligent activity” is a question of law. See Bright, 89
S.W.3d at 606-07. 
          We have concluded that this is a “negligent activity” case and, in addition, that
Phonoscope conclusively established that it owed no duty to Wood as a matter of law. 
Because Phonoscope’s contentions in moving for summary judgment had already
negated the “premises defect” theory of liability, and because this is a “negligent
activity” case as a matter of law, we conclude that this case comes within the Judwin
Properties exception and, therefore, that the trial court did not err by granting
summary judgment on the “premises defect” claim added by Wood’s amended
pleadings. 
B.      Negligent Hiring of RNC
          Wood’s amended petition alleged that Phonoscope negligently hired RNC
because RNC had no employees of its own, but was nevertheless engaged to do the
Ranchester project “despite . . . having no knowledge of safety rules, safety laws,
safety codes, and/or safety standards.” Texas common law, on which Phonoscope
relied in moving for summary judgment, recognizes that a person who employs an
independent contractor must use reasonable care to select an independent contractor
who is competent to do the work assigned. See Moore v. Roberts, 93 S.W.2d 236,
238-39 (Tex. Civ. App.—Texarkana 1936, writ ref’d); King v. Assoc. Commercial
Corp., 744 S.W.2d 209, 213 (Tex. App.—Texarkana 1987, writ denied); see also Ross
v. Tex. One P’ship, 796 S.W.2d 206, 216 (Tex. App.—Dallas 1990), writ denied per
curiam, 806 S.W.2d 222 (1991) (holding that one who hires independent contractor
has duty of care and “reasonable inquiry”); also Webb v. Justice Life Ins. Co., 563
S.W.2d 347, 349 (Tex. Civ. App.—Dallas 1978, no writ) (adopting Restatement
(Second) of Torts § 411 (1965)). As these authorities and the restatement recognize,
negligent hiring is an independent tort. See Read v. Scott Fetzer Co., 990 S.W.2d 732,
739 (Tex. 1998) (Hecht, J., dissenting) (noting that, to extent contractor retains
control, subcontractor is not “independent”). One hiring an independent contractor
may be held responsible for the contractor’s negligent acts if the employer knew or
should have known that the contractor was incompetent and a third person was injured
because of the contractor’s incompetence. King, 744 S.W.2d at 213; see also
Restatement (Second) of Torts § 411(a) (1965) (recognizing that employer may
be “subject to liability for physical harm to third persons” caused by employer’s failure
to exercise reasonable care to employ competent and careful subcontractor to do work
that will involve risk of physical harm unless skillfully and carefully done). 
          Phonoscope has consistently maintained that RNC and all its subcontractors
were independent and that Phonoscope neither retained nor exercised control over
them. Although lack of control over its independent contractor was dispositive of
Wood’s premises-based claims, lack of control is not an element of his negligent-hiring claim and proof of lack of control was therefore not dispositive of the claim. 
To be entitled to prevail as a matter of law on that claim, therefore, Phonoscope had
a duty to, but failed to, move for summary judgment. 
          In response to Wood’s claim that its reurged motion for summary judgment did
not address his negligent hiring claim, Phonoscope nevertheless argued that it was
entitled to prevail as a matter of law for the following reasons:
Plaintiff has no evidence whatsoever that Phonoscope had any
knowledge that RNC had previous problems performing its job safely. 
Furthermore, the Plaintiff has no evidence that Phonoscope knew or
should have known that the Plaintiff was not an employee of RNC or that
he was working with an inexperienced crew, hired through a sub-sub-contractor relationship of which Phonoscope was not aware. 
 
Wood had no burden to produce evidence to raise a fact issue on his negligent-hiring
claim, however, because Phonoscope had never moved for summary judgment on that
basis. Accordingly, we hold that the trial court erred by rendering summary judgment
in favor of Phonoscope on that theory of liability. 
          We sustain Wood’s sole issue with respect to his contention that the trial court
erred by granting Phonoscope’s motion for summary judgment on Wood’s claim that
Phonoscope was negligent in hiring RNC as its subcontractor for the Ranchester
project. In all other respects, we overrule Wood’s sole issue.
Conclusion
          With the exception of Wood’s claim of negligent hiring against Phonoscope,
which we reverse and remand for further proceedings, we affirm the judgment of the
trial court.
 
 
                                                             Elsa Alcala
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Alcala and Higley.